1. INSANE PERSONS (§ 94*)—APPOINTMENT OF SPECIAL GUARDIAN—RIGHT TO TRAVERSE.

Where the proponent of a will alleged that the daughter of the testatrix was mentally incompetent, although she had never been so adjudicated, and the surrogate, under the authority conferred by Code Civ. Proc. § 2527, had appointed a person upon whom the citation to the daughter should be served, the daughter has the right to appear and traverse the allegation of her incompetency, since that section of the Code, interpreted in the light of the policy and history of the law, and of Code Civ. Proc. § 2528, which provides that a person of full age may, unless judicially declared incompetent, prosecute or defend in the Surrogate's Court, will not be construed to deny to such person a right to be heard in a proceeding affecting her liberty or estate.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165; Dec. Dig. § 94.*]

2. INSANE PERSONS (§ 94*)—APPOINTMENT OF SPECIAL GUARDIAN—BURDEN OF PROOF.

Where such a traverse is made, the burden is upon proponent to establish his allegation of incompetency beyond all peradventure.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165; Dec. Dig. § 94.*]

3. INSANE PERSONS (§ 94*)—APPOINTMENT OF SPECIAL GUARDIAN—REFERENCE.

In such a case, a reference to determine the issue would not be conclusive upon a trial of the heir's competency in the Supreme Court, and therefore will not be granted by the surrogate.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165; Dec. Dig. § 94.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

4. HUSBAND AND WIFE (§ 205*)—MARRIED WOMEN'S PROPERTY ACTS—OPERA-
TION—EQUITABLE RELIEF.
    The statutes making the estates of married women sole, both at law
and in equity, do not prevent the granting of equitable relief in cases
where the estate is endangered by an improvident husband.
    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 744,
748–755, 970; Dec. Dig. § 205.*]

5. INSANE PERSONS (§ 94*)—APPOINTMENT OF SPECIAL GUARDIAN—VACATION
OF APPOINTMENT.
    Where an heir, who was alleged by the proponent of a will to be in-
competent, so that the citation was served upon a special guardian ap-
pointed by the court, appeared and traversed the allegation of incompe-
tency, the surrogate had jurisdiction to vacate the appointment of the
special guardian and to permit the heir to contest the will in person.
    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165;
Dec. Dig. § 94.*]

6. WILLS (§ 220*)—RIGHT TO CONTEST—PROVISIONS FAVORABLE TO CONTESTOR.
    The wisdom of the provisions of the will, even when for the contestor's
benefit, is not sufficient reason for denying the right to contest.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 532–537; Dec. Dig.
§ 220.*]

7. INSANE PERSONS (§ 94*) — PROCEEDINGS FOR PROBATE — APPOINTMENT OF
SPECIAL GUARDIAN—MOTION TO STRIKE ALLEGATIONS.
    Where the appointment of a special guardian for an heir alleged to be
incompetent was vacated upon her traverse of the allegations and the
affidavits in support thereof, the allegation of incompetency, if made in
good faith, will not be stricken out; since it was the basis for action by
the court authorized under the Code.
    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 164, 165;
Dec. Dig. § 94.*]

In the matter of the will of Annette Wagner Haynes. Motion by
an heir of a testatrix to vacate an order of the Surrogate appointing
a special guardian for such heir to receive service of citation, and also
to strike out of the petition for probate an allegation that the heir is
mentally incompetent. Order vacated, but allegation not stricken.

Halstead H. Frost, Jr., of New York City (James W. Osborne, of
New York City, of counsel), for the motion.
Edward H. Lockwood, of New York City, for proponent.
Elwood J. Harlam, of New York City, special guardian.

FOWLER, S. This motion is of grave importance, as it goes to
the surrogate's jurisdiction of a common proceeding in this court pur-
suant to the Code of Civil Procedure. When proponent of a will has
reason to believe that a party entitled to be cited is incompetent, a
resort to the method pursued here is common practice in this court.
In this proceeding the daughter of testatrix thus alleged to be incom-
petent now comes into court and traverses the aforesaid allegation of
the proponent's petition, and by affidavits supporting the traverse pre-
sents a serious question of fact for my determination. Is she or is
she not incompetent? Counsel for the motioner also question the
power of the surrogate to make an order designating a special guard-
ian or thus to deprive a party of a right to appear in person or by
counsel in such a proceeding as this. The gravity of the question at-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tracted my attention on the argument, and I have reserved my decision for some time in order to examine it with due deliberation.

It is a very singular fact in this proceeding that after a somewhat earnest and extended oral argument, the briefs submitted to me on either side, and for the special guardian as well, do not cite a single adjudication; four briefs without a citation are unusual in this court. The contentions of the briefs are made up of unsupported general propositions, and yet some of these are of serious intrinsic weight in view of a long practice in this court, which may tend to deprive a party in this court of a substantial right.

[1] I take it that the right of a person to be heard in any proceeding affecting his liberty or estate is incontestable in our jurisprudence, and from the earliest times the common law and the course of the legislation in common-law states has guarded sedulously the right of persons accused of incompetency of any kind to traverse the inquisition or other proceeding in the nature of one de lunatico inquirendo. I cannot think for an instant that the comparatively recent legislation embodied in the Code of Civil Procedure and affecting this court's jurisdiction over incompetents was intended to introduce any revolutionary principle in respect of proceedings affecting the estates or persons of those asserted to be incompetents.

For my own satisfaction I have again examined the statutes of this state relating to proceedings against persons alleged to be of unsound mind, from the very beginning of our independent government, and, indeed, statutes enacted before that epoch, and I must say that I have found them entirely consistent with the ancient common-law principles of liberty and with the right to contest such proceedings established in common-law countries. The statutes in the main are re-enactments of provisions found in older statutes or in the text of the common law itself.

Under the old jurisprudence the chancellor, not ex virtute officii, but under the sign manual as representing the crown, had jurisdiction, or the right of administration, of the estates of incompetents. It is necessary to notice that it was always made a question whether the chancellor or even the crown had such jurisdiction until after an inquest found which involved the finding of a jury. It is, however, unnecessary to review at length the ancient practice on this subject, as it is sufficiently apparent in the older books of authority. We find the statutes of this state immediately after our independence of the crown supplied to the chancellor the want of a delegation by sign manual, and invested him as chancellor, and ultimately the county courts as well, with a jurisdiction over those mentally incompetent. Chapter 12, Laws of 1788; 2 J. & V. 196; 1 R. L. 147. This legislation crept into the Revised Statutes (2 R. L. 52) and ultimately into the Code of Civil Procedure. After the year 1846 the Supreme Court succeeded ultimately to the general jurisdiction of the chancellor over incompetents. At all times the ancient practice in such matters in this state corresponded very generally with the practice of the Chancery Court known to the common law. 2 Barb. Ch. Prac. 226 et seq., and particularly the decisions.

While it was always necessary to proceed to an inquisition by commissioners and a jury "venire facias juratores" in a contested proceeding to establish lunacy, yet chancery seems at times to have taken cognizance of mental incompetency without such formal adjudication. In Nelson v. Duncome, 9 Ves. 211, the master of the rolls took occasion to review the law on this very point, authorizing chancery to appoint a guardian for one alleged to be incompetent and yet not so formally adjudicated. It will suffice to point out that the master of the rolls affirmed the power of the court to protect those who were mentally incompetent, even though no regular adjudication to that end had been found. It is only necessary to indicate that the recent legislation of this state, to which I shall refer, goes no farther than this decision. It seems to me that the framers of the statutes authorizing the surrogates to designate persons to receive citations and to appoint special guardians for alleged incompetents must have had this very distinction in mind. Chapter 693, Laws of 1872; sections 2527, 2530, C. C. P. I do not find, as asserted by the motioner's counsel, that section 2528, Code of Civil Procedure (providing that a party of full age may, unless judicially declared incompetent to manage his affairs, prosecute or defend in this court in person), is inconsistent with the power conferred on this court by the other sections of the Code and designed to protect persons incompetent but not judicially so declared. A careful analysis of the various sections of the Code will show, I think, that they apply and are intended to apply to different states of fact. But I will not dwell on this point as it is not now here.

[2, 3] This brief review of the general state of the law brings me to the real point in this matter. Of the general right of the party, who is alleged to be incompetent by a proponent of a will, to appear here in person or by attorney and traverse the allegation that he is incompetent I have no doubt. It would, as I stated before, be inconsistent with the general principles of our jurisprudence if it were held otherwise. An appointment made on a false or erroneous suggestion of the mental condition of a party may be vacated by the court making it, and I so hold. The issue of fact is very plain in this matter, but the proponent has not established his contention beyond all peradventure as he should do. That a reference on such an issue could be made to take and report the testimony of the witnesses under oath is possible. But references to report a state of facts would not be conclusive if the same issue were regularly brought to trial in the Supreme Court, and I am disinclined to useless or novel references of doubtful utility.

[4] While the safety of the lady's estate from machinations of her husband may be and I think is in question, as asserted by the proponent, I doubt whether this is the proper forum or the method employed in this matter is the proper method to defeat them. If the proponent choose to institute a proceeding or action in the Supreme Court to have the heir at law of testatrix adjudicated incompetent, the way is open and, no doubt, proper relief may be procurable in that historic and extended jurisdiction. I have never thought that the extent of equitable relief even was a canon closed by Lord Eldon, as

often said in the books. To my mind, equity is still a living organon and not a dead one. The statutes making estates of femes covert estates sole both at law and in equity do not prevent the granting of even equitable relief against bad or improvident husbands in a proper case.

[5] This digression brings me to the real point in this cause. The lady whose incompetency is averred in this proceeding has appeared by counsel, and by strong affidavits of reputable persons has completely controverted the allegation and supporting affidavits of the proponent. That I have in view of the traverse jurisdiction in this proceeding to vacate the order appointing the special guardian I do not doubt, nor do I doubt that under the circumstances disclosed I ought to vacate the orders designating and appointing the special guardian so as to enable her as sole heir at law and next of kin of testatrix to appear in person or by attorney and contest the probate of her mother's will, although, as I am informed, such will carries the entire estate to trustees for the benefit of this daughter.

[6] But the purport of the will, however wise in the abstract, is no reason for denying the right of the motioner here to contest the probate in the usual form.

[7] As to the part of the motion to strike out of the petition for probate an allegation made no doubt in good faith by the mother's executor, I deny it. The allegation conforms to the statute and was the basis of the authorized action of this court in the premises. I see no reason for striking it out and very good reason for retaining it. Present orders on the usual notice in conformity with this opinion.