■ MAUDE SUTHERLAND, an Infant, by Her Mother and Natural Guardian, HESTER SUTHERLAND, et al., Appellants, v CITY OF NEW YORK et al., Respondents — Order, Supreme Court, New York County (Ira Gammerman, J.), entered March 16, 1984, which, *inter alia,* removed plaintiff Hester Sutherland as the guardian of her daughter and appointed a substitute guardian ad litem, is reversed, on the law, the facts, and in the exercise of discretion, plaintiff Hester Sutherland is reinstated as guardian and the appointment of the substitute guardian ad litem is vacated, without costs.

Hester Sutherland (mother) is the natural mother of Maude. In November, 1980 the mother commenced, as Maude's legal guardian and on behalf of herself, a medical malpractice action against defendants to recover damages for personal injuries suffered by Maude, which include below-knee amputation of both of her legs, partial amputation of her upper extremities, as well as hearing, vision and speech impairments, coupled with brain damage. The verified complaint alleges, *inter alia,* that the defendants failed to properly diagnose and treat this child for pneumococcal sepsis, sickle-cell anemia, dehydration and meningitis.

After issue was joined and discovery was completed, Special Term supervised settlement negotiations. The mother accepted an offer from the defendants of $1.2 million plus $450,000 for attorney's fees and disbursements, in settlement of the claims of both Maude and herself. The defendants did not condition their offer upon the structured payment of the funds. However, Special Term expressed its own view that the best interests of the infant required that payment be made over a period of years. The mother disagreed and insisted that the funds be paid in a lump sum. In response to this position of the mother, Special Term entered an order removing the mother as guardian and replacing her with a guardian ad litem.

We have no doubt that the trial court was solely motivated by its concern for what it perceived to be in the child's best interest; however, our examination of the settlement proceedings leads us to conclude that the mother, as guardian, "has been shown to be duly qualified and capable * * * It is the policy of this State to encourage parents to act as guardians" (*Matter of Manufacturers Hanover Trust Co.,* 83 AD2d 808). This court stated in *Matter of Leggett* (25 AD2d 727, 728), "CPLR 1201 and 1202 * * * [indicate] the legislative preference for the appearance of the natural guardian". In reaching our determination, we have carefully considered the court's responsibility only to approve settlements of the infant's claims that are in the best interests of the infant (CPLR 1207). However, where the mother has negotiated and

agreed to accept a substantial sum in settlement and the only disagreement with the court is whether that amount should be paid in one sum or in structured payments, we find such disagreement to be insufficient to warrant the removal of the natural parent as guardian ad litem.

We hold that this power to approve a settlement does not translate into a power to dictate the terms of settlement (*Lee v Gucker,* 27 AD2d 722; *Smith v Ford Motor Co.,* 38 AD2d 852). Thus, we find that Special Term abused its discretion in removing the mother as guardian. Concur — Murphy, P. J., Ross, Carro and Lynch, JJ.

Kupferman, J., dissents in a memorandum as follows: The court stands in the position of *parens patriae* and must act in the best interests of the infant. (See *Matter of Sanjivini K.,* 40 NY2d 1025, 1027.)

It is important that the infant plaintiff, whose legs have been amputated and who has suffered partial amputation of her upper extremities, be properly cared for. Moreover, the public and society at large should not have to bear the burden of her becoming a public charge.

The court, after due and intelligent deliberation, concluded that the mother, the natural guardian, was not fully qualified to make the determination with respect to the offer of settlement and replaced her as guardian ad litem (CPLR 1202) with an eminent trial lawyer in the negligence field, Richard Godosky, Esq., who could give mature, educated consideration to the proposed settlement.

The mother had originally indicated that she would approve a net (after deduction of attorney's fees) settlement of $1,200,000. The problem then became one of whether it should be a cash payment or a structured settlement. (See Kelner and Kelner, Trial Practice, Structured Settlements, NYLJ, Nov. 14, 1984, p 1, col 1.) There was no indication that the mother had any special ability to administer so large a sum. The structured settlement had a present value of approximately $2,400,000 and would accomplish what was necessary for the care of the child.

Inasmuch as there is no actual determination as to the mother's derivative suit for loss of services and expenses, we are not here confronted with that question, and she may pursue that on her own. We are concerned only with the rights of the child.

As indicative of the rationality of the trial court in its approach in removing the mother and appointing a substitute guardian ad litem, we need only consider a case presented to our court *on the same day* that this matter was before us, *Marchello v Lenox Hill Hosp.* (107 AD2d 566), wherein, in 1974, a mother

settled and released a malpractice burn case on behalf of her child for $3,500 and later found that the infant had a "drop-foot" condition which it was contended was due to the burn injury and the malpractice that caused the burn. In the subsequent suit for the additional malpractice, this court dismissed the complaint because of the release given in the earlier suit. What better example can we have of the need for protecting the infant which goes beyond a natural guardian's love and affection?