232 N.J. Super. 74 (1989)
556 A.2d 775
ETHAN ZUKERMAN, AN INFANT, BY HIS GUARDIAN AD LITEM, ROBERT ZUKERMAN, AND ROBERT ZUKERMAN, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
PIPER POOLS, INC., DAVID HOLDEN, ZEITA HOLDEN, ATREO MANUFACTURING CO., INC., ESTHER WILLIAMS POOLS, POSEIDON POOLS, A DIVISION OF S & V POOLS, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO ATREO MANUFACTURING CO., INC., GIBRALTAR FACTORS CORP., GIBRALTAR CORP., J/S/A, & AS SUCCESSOR IN INTEREST TO ATREO MANUFACTURING CO., INC., AND ARTHUR RAMBO AND JAMES RAMBO, INDIVIDUALLY, TRADING AS XYZ COMPANY OR XYZ CORPORATION, FICTITIOUSLY NAMED BUSINESS ENTITIES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1989.
Decided March 23, 1989.
*77 Before Judges PETRELLA, SHEBELL and GRUCCIO.
Gerald M. Eisenstat argued the cause for appellants Ethan Zukerman, an infant, by his guardian ad litem, Robert Zukerman (Eisenstat, Gabage & Berman, attorneys; Gerald M. Eisenstat, and Tina M. Labrusciano, on the brief).
*78 Joseph H. Kenney argued the cause for appellant Robert Zukerman, Individually (Kenney & Kearney, attorneys).
Robert F. Colquhoun argued the cause for respondent Piper Pools, Inc. (Colquhoun & Colquhoun, attorneys; Robert F. Colquhoun, on the brief).
John P. Montemurro argued the cause for respondent Atreo Manufacturing Co., Inc. (Tomlin, Clark & Hopkin, attorneys; John P. Montemurro, on the brief).
Michael E. Benson argued the cause for respondent S & V Pools, Inc., t/a Poseidon Pools (Buonadonna & Benson, attorneys; Michael E. Benson, on the brief).
Thomas A. Shovlin argued the cause for respondents Poseidon Pools, Inc. & Gibraltar Corp. of America (Riley & DiCamillo, attorneys; Thomas A. Shovlin, on the brief).
Sharon Hardy argued the cause for respondents Arthur Rambo and James Rambo (Stanley P. Stahl, attorney; Beth A. Wright, on the brief).
William P. Doherty, Jr. argued the cause for respondents David Holden and Zeita Holden (William P. Doherty, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
This interlocutory appeal focuses on whether the judge in a negligence suit brought in part on behalf of an infant plaintiff may remove the father of that infant as guardian ad litem because the father will not accept the settlement offers. We find no basis under the circumstances of this case to warrant the judge's removal of the guardian ad litem and his appointment of a substitute guardian. Accordingly, we reverse and remand.
The underlying tort action stems from a February 28, 1977 accident to the then not quite three year old infant plaintiff, Ethan Zukerman (born April 8, 1974). Ethan suffered severe *79 brain damage and neurological impairment from a near drowning in a neighbor's above-ground swimming pool. It had been somewhat warm on the afternoon of the accident and Ethan's mother left him in their fenced-in back yard playing with the family's two St. Bernard dogs. Although Mrs. Zukerman checked on Ethan at various times, at some point he was noticed missing. He apparently left the yard and found his way to the Holdens' property located on the street behind and parallel to the street on which the Zukermans' property was located and about three homes away. Ethan was found about 45 minutes later floating unconscious in the Holdens' back yard swimming pool.[1]
Suit was instituted on May 21, 1980 by Robert Zukerman, individually and as guardian ad litem of the infant plaintiff, against various defendants, including the neighbors, David and Zeita Holden, Piper Pools, Inc., and Atreo Manufacturing Co., Inc. From time to time the complaint was amended primarily to add defendants on theories of direct or successor liability, including Arthur and James Rambo (the Rambos) who installed the pool. Disputes arose between various parties and their insurance carriers and insurance agents. Three declaratory judgment actions were instituted. One is still pending,[2] although *80 consolidated with this case. Notwithstanding the pendency of that unresolved and consolidated action, the trial of the tort action was ordered to commence on September 5, 1988.[3]
Certain significant events relative to this appeal took place prior to that date. In September of the preceding year a judge assigned to the case began holding conferences with plaintiffs and defendants. The record reflects that the judge had extensively involved himself in settlement discussions and negotiations. He met with all parties as well as separately with the attorneys for defendants and their insurance representatives, and with plaintiff and his attorneys on separate occasions. He also handled subsequent conferences and became the assigned trial judge. Although plaintiffs argue that the judge had excluded their attorneys[4] without their consent from some of these meetings, they apparently did not object below to such procedures. Indeed, their implied consent appears in some of the transcripts, particularly that of an in camera proceeding.
Obviously, a judge should not confer or meet with one party or attorney to the exclusion of the adversary unless there is express consent, or unless necessary on an aspect or matter having nothing to do with the merits or ultimate disposition of any issue. See R. 1:2-1; Code of Judicial Conduct, Canon 3A(5); Matter of Yaccarino, 101 N.J. 342, 391 (1985); Hake v. Manchester Tp., 98 N.J. 302, 317-318 (1985); Stout v. Stout, *81 155 N.J. Super. 196, 203-204 (App.Div. 1977). But, even in the latter situation the adversary should be advised and the appearance of impropriety avoided. In any event, the judge spent considerable time and effort in attempting to forge a settlement.
On September 15, 1987 the judge signed a so-called "management order" which, among other things, scheduled a settlement conference on December 21, 1987. In February 1988 the judge requested plaintiffs to provide him with a demand for settlement. In response, plaintiffs submitted a $10.8 million settlement demand in March 1988. The judge communicated this demand to defendants.
After a June 23, 1988 conference the judge advised plaintiffs' attorneys that defendants offered a settlement consisting of $300,000 payable up front to cover counsel fees and costs, and a structured settlement costing $1,250,000, for a total package allegedly costing $1,550,000.[5] A June 27, 1988 management order directed plaintiffs to review defendants' settlement offer, and accept or reject it by July 15, 1988, or submit a counter-proposal. It also scheduled "final settlement discussions" on July 22.
After consultation with his attorneys, his financial advisers and his wife, plaintiff rejected the offer as inadequate and made a demand for $9.3 million. Piper Pools filed a motion returnable on short notice on August 19, 1988, to remove Zukerman as guardian ad litem and have a substitute appointed on the ground that the father's refusal to accept defendants' settlement offer was not in the infant's best interests. The judge described the motion as asserting that the guardian was not acting in the infant's best interests "in refusing to agree to a proper structured settlement which the court negotiated with *82 defense counsel." The judge denied the motion at this time, without prejudice, stating:
What Mr. Colquhoun, however, fails to note is the fact that the proposal to plaintiff's counsel dealing with the proposed structure was merely a proposition. Although, I have actively worked with defense counsel in an attempt to put together a package, and although the package proposal as referred to was tentatively .. . refused, the Court could not guarantee that that proposal was a reality. The reason for that is that the proposal as discussed with defense counsel would have required Mr. Colquhoun's carrier to pay three hundred thousand dollars when, in fact ... and only offered two hundred thousand dollars, as required Ms. Wright's ... carrier to pay three hundred thousand dollars when, in fact, Ms. Wright has only offered two hundred thousand dollars. Thus, the proposed settlement, which would call for one point two million dollars, never reached fruition. The Court, at its best, only had one million dollars and no arrangements had been made for up  for monies to pay counsel fees, which clearly was a part  it would be necessary to be discussed between the defense counsel. Therefore, the motion to dismiss Mr. Zukerman, Sr., is denied without prejudice.
* * * * * * * *
If, in fact, on the day of trial a new settlement proposal is placed unconditionally before the plaintiff as guardian, and if, in fact, the plaintiff as guardian were still denied a proper settlement, and if the plaintiff offers no predicate upon which it  he has reached the decision to deny the proposed settlement, then Mr. Colquhoun, on behalf of his client, may resume or renew his motion. But until the plaintiff turns down a firm settlement, he should continue to act on behalf of his minor son who is the injured plaintiff.
Although the motion was denied, the judge essentially invited its renewal on the trial date.
Jury selection began on September 6, 1988 after pretrial motions were heard, and continued on September 7 and 9 until the jury panel was exhausted. The judge entered a September 7 order which plaintiffs' attorneys represent was signed without their knowledge or consent, requiring all defendants and their insurance carriers to attend a meeting in the judge's chambers on September 13, 1988 to discuss settlement.[6] The *83 entry of an order in the cause without notice to all parties is generally not proper, R. 1:5-1, even if certain parties are not directly affected, except for scheduling and administrative matters. Notice is an essential requirement of due process; the rules provide for consideration of ex parte matters or the entry of ex parte orders only in certain limited and emergent situations.[7] However, as previously observed, a judge should not confer or meet with any party, or with counsel for any party, without all attorneys either consenting or having the opportunity to be present. R. 1:2-1; Canon 3A(5); Matter of Yaccarino, supra (101 N.J. at 391); Hake v. Manchester Tp., supra (98 N.J. at 317-318); Stout v. Stout, supra (155 N.J. Super. at 203-204).
Jury selection resumed and was completed on the morning of September 14, 1988. The judge spent the remainder of the day unsuccessfully trying to negotiate a settlement. About 3:00 p.m., at plaintiff's attorneys' request, the judge met with plaintiff, his wife and their attorneys, for an in camera discussion in chambers. The judge said he had negotiated a settlement with defendants totaling $2,415,000, and that although they wanted a decision by 5:00 p.m., he had persuaded them to give plaintiffs until 9:30 the following morning. However, if no answer was received by then the offer would be withdrawn and the trial *84 would commence. Plaintiff's request for additional time to review the proposal with his attorneys and financial advisers was denied.
On September 16, 1988, at plaintiff's request, the judge held another in camera meeting with him, his wife and his attorney so that he could tell the judge why he rejected the proposed settlement. The meeting was stenographically recorded on the understanding, or at least the request, of Zukerman's attorney that the record[8] would remain confidential as to the specifics of the discussions. Plaintiff informed the judge that he was working on a counter-proposal with his financial advisers at the investment banking firm of Morgan Stanley, where his brother was a vice-president. The judge denied plaintiffs' request for an additional extension of time, and informed them for the first time that defendants were offering a lump sum settlement of $2,415,000 as an alternative to the structured settlement and also mentioned a third structured settlement proposal by one of the defendants.
The judge then went on the bench and advised defendants' attorneys that although plaintiffs' attorneys had assertedly recommended acceptance of the offer, plaintiff rejected it. Piper Pools orally renewed its motion to remove Zukerman as guardian ad litem. Oral arguments were heard. Plaintiffs' attorneys submitted a new settlement demand through the judge during a recess, but they were told that it was unattainable. The judge then provided plaintiff with a proposed fourth structured settlement, but because court was about to reconvene, plaintiff was unable to analyze it. The judge then granted defendants' motion, ordered the removal of Zukerman as guardian ad litem and designated a named attorney to serve as guardian.
In ordering the guardian's removal the judge relied on the court's power to approve infant settlements. He reasoned that *85 "if the Court is entrusted with the responsibility of acting as the parent ... for a child who is injured who has a claim before this Court, then logic dictates that the Court must have the authority to remove as a guardian one who is not acting in the best interest of the ward." In the judge's view this included authority to remove a guardian who failed to take into account the advice of his own attorney or who fails and neglects to appreciate the inherent risks of trial and "evaluates a claim as if there were absolute liability."
The judge noted that the case was to be presented on a negligence basis as well as on a strict liability and products liability basis, and it was conceivable that the jury could render a verdict solely against the Holdens and the Rambos and "exculpate all of the manufacturers and those in the chain of commerce." According to the judge, the likelihood of the Holdens and Rambos paying any substantial claim in excess of their insurance coverage ($185,000[9] and $300,000, respectively) was minimal. After a review of the structured settlement proposals the judge said:
Thus, we have the unique situation that the guardian in the matter seeks to risk a lifetime of guaranteed payments for his son with a substantial up front money to take into account his present needs or the present needs of the family on a sheer gamble that a jury would return a verdict substantial in nature which might never be collected, which might be reversed, both after the liability trial or after the trial on damages.
Further complicating the matter is the fact that there is a separate declaratory judgment suit presently pending in which there are substantial legal challenges to the insurance coverage in this case. There are issues of fraud. There are issues of conflict of law. There are issues of broker negligence. There are questions clearly before the Court as to whether or not coverage will even exist in the long run. And thus the guardian is wishing to gamble against an unknown pot with unknown coverage with unknown quantity of legal problems and appeals.
In ordering the guardian's removal the judge relied on Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165 (Ch. 1946), which dealt with removal of a trustee or executor *86 from fiduciary duties for gross carelessness. The judge recognized that there was no specific authority to remove a natural father as his child's guardian ad litem.
In appointing an attorney to replace the father as guardian ad litem the judge pointed out that his designee was primarily a plaintiff's attorney and "has handled multifaceted law suits including a case in which he represented a three year old quadriplegic before me last year, when structured settlements and settlements were negotiated ... resulting in recovery of over $1,000,000 gross settlement. He is an attorney who is well aware of structures...." In appointing a replacement guardian, the judge said:
If [the court appointed guardian ad litem] is not able to settle, if, in fact, he recommends the acceptance of one of the proposals made or some variant then, of course, the Court will exercise its discretion reviewing the proposed settlement in determining if, in fact, it should be accepted.
On the other hand if [he] feels that the matter should go to trial which would be his right to make that recommendation to the Court, the Court will hear him, and if a trial is to commence, a new jury will be impaneled.
The judge seemed to be saying that it would be up to him not just to approve a friendly settlement if and when the parties had agreed, but that he would be the arbiter of whether the guardian ad litem would be able to decline to accept a settlement offer. A mistrial was declared and the jury discharged. We granted leave to appeal the September 20, 1988 order which memorialized the judge's action.
We do not minimize the judge's admonitions regarding the risks to plaintiffs' causes of action and damage claims by a jury trial.[10] Such risks are inherent in all trials and to all parties. It is also axiomatic, as the judge indicated, that the potential *87 insurance coverage available to satisfy a judgment depends on how many of the insured defendants are found liable.[11]
A serious preliminary flaw appears. Nowhere in the proposed settlement, or the discussions, was there any amount separately allocated for the individual claims of Robert Zukerman. Obviously, the up-front monies here would not cover the medical expenses involved. The judge could not have disposed of the entire case based on these settlement discussions. At oral argument we inquired regarding allocation of the proposed settlement sum. No attorney could state any specific amount allocated for the claims of the parent. All defense counsel had assumed that the entire case was to be settled for the offered amount, including the father's claim. However, nowhere in the record of this case was any dollar amount allocated for his claims. It is beyond peradventure that no judge could have properly forced Zukerman to settle his own claim rather than going to trial. It thus does not appear that there was a specific dollar amount allocated to settle the infant's claim, although our decision here would not be affected if the appropriate allocations existed. Moreover, as a practical matter it is unlikely that defendants (through their respective insurance carriers) would have settled only the infant's claims without simultaneously disposing of the entire litigation. That is not how settlements are usually accomplished as conceded by the attorneys at oral argument.
Representation of infants by a guardian and the appointment thereof, including that of a guardian ad litem, are covered generally by R. 4:26-2. The court may appoint a guardian for an infant in accordance with paragraph (b) of the rule if one of *88 the following conditions exists: a guardian had not already been appointed; a conflict of interest exists between the guardian and the ward; or where there is good cause. Rule 4:26-2(a) states generally that except as otherwise provided by law, an infant or incompetent person shall be represented in a law suit by his guardian or "by a guardian ad litem" appointed by the court in accordance with paragraph (b) of this rule. No specific rule provision governs removal of a guardian ad litem.
At the time the matter was called for trial in September 1988 Ethan was approximately 14 1/2 years old. He has been supported to date by his parents who obviously expect to continue to provide that support. Robert Zukerman is president of a family owned wholesale food distributorship established in 1907, and which now has gross sales of over $4,000,000 per year. He is also involved with other investment activities, and has been advised by his brother who is with the investment firm of Morgan Stanley.
Rule 4:26-2(b)(1), which provides for appointment of a guardian ad litem, establishes a preference for the parent's appointment where no conflict exists, and reads:
(b) Appointment Of Guardian Ad Litem

(1) Appointment Of Parent In Negligence Actions. In negligence actions, unless the court otherwise directs, a parent of an infant or incompetent person shall be deemed to be appointed guardian ad litem of his child without court order upon the filing of a pleading or certificate signed by an attorney stating the parental relationship, the child's status and, if an infant, his age, the parent's consent to act as guardian ad litem and the absence of a conflict of interest between parent and child. If the infant is 17 years of age or older, his consent shall be endorsed on such pleading and certificate.
Subsection (2) of this section provides a procedure for appointment of a guardian where an infant is 17 years of age or older upon his verified petition or for an infant under that age upon the verified petition "of a friend on his behalf." Subsection (3) allows appointment of a guardian ad litem on motion of "a party to the action"; and subsection (4) states that "the court may appoint a guardian ad litem for an infant or alleged *89 incompetent person on its own motion."[12] That appointment of a parent may be made without court order upon certification by plaintiff's attorney in the complaint and a statement of absence of conflict. In the instant case, the infant's father served as such guardian since the filing of the complaint on May 21, 1980. The provisions of R. 4:26-2(b)(2) and (3) do not apply here.
Plaintiffs argue on this appeal that defendants do not have standing to apply for removal of the guardian ad litem because they could not have sought his appointment. They point out that the opposing party is not such a "friend" who could seek appointment by petition under R. 4:26-2(b)(2). Nor is the infant without representation as required for appointment on a party's motion under R. 4:26-2(b)(3). They also argue that the refusal of a guardian to accept a proposed settlement in a case of this nature does not constitute a conflict of interest which would require his removal.
Whether our rules permit an opposing party to challenge the initial appointment of a guardian ad litem or seek appointment of a guardian is not the issue. An opposing party may petition for a guardian ad litem's removal if adequate grounds exist. The court or anyone with knowledge of improprieties by a guardian or of something contrary to the ward's best interests should not be precluded from bringing this to the court's attention. The question is, however, were there adequate grounds here for Zukerman's removal?
*90 Defendants argue that the intent of R. 4:26-2 is to permit the court to intervene and replace a guardian ad litem if a conflict of interest exists or there is other good cause. Although defendants argue that this is particularly important in a case such as this where a parent serves as guardian ad litem, because the appointment is pro forma, we find no factual or legal basis to have questioned the father's designation as guardian prior to or at the institution of suit, or thereafter. No defendant has pointed out or urged any actual conflict of interest between the plaintiffs.
Merely because a settlement is rejected by a guardian is not in and of itself a sufficient basis to warrant removal. Nor would it establish the type of conflict contemplated by our rules. More is required. If the guardian ad litem were found incompetent due to some disability such as drug addiction, alcoholism or the like, removal would be warranted. Likewise, where a guardian ad litem attempts to arrogate the entire settlement, or substantially all of the settlement, to the guardian's individual claim, as opposed to the infant's claim, removal might be appropriate. However, such a situation is not presented here.
Our rules for friendly settlements, R. 4:44-1 et seq., are intended to minimize or prevent conflicts of interest from occurring and to assure the reasonableness of settlements. See also R. 4:48A. Thus, court approval is required for infant settlements. See Colfer v. Royal Globe Insurance Co., 214 N.J. Super. 374, 377 (App.Div. 1986); Bauer v. Griffin, 104 N.J. Super. 530, 544-546 (Law Div. 1969), aff'd 108 N.J. Super. 414 (App.Div. 1970), certif. den. 56 N.J. 245 (1970).
Although no New Jersey cases deal directly with the issue of removal of a guardian ad litem for refusal to settle, the issue has been reviewed in cases from New York, and at least one California case. The cases from these other jurisdictions, although not binding on this court, are, however, instructive as to the treatment of this issue by other states. In Lee v. Gucker, *91 16 Misc.2d 346, 186 N.Y.S.2d 700 (N.Y. Sup. Ct. 1959), rev'd, 27 A.D.2d 722, 279 N.Y.S.2d 697 (1967), an infant sought damages through her father, her appointed guardian ad litem. The trial judge's settlement efforts, which lasted over several days and involved the services of an interpreter because the father had difficulty understanding English, resulted in the guardian ad litem rejecting a $4,000 settlement offer. Id. 186 N.Y.S.2d at 701. The judge considered the guardian ad litem an officer of the court whose duties are strictly limited by law. The judge said that the relevant New York civil practice rule then in effect underscored the guardian's duty to protect the rights of the infant. The judge held that the court not only had the power to remove a guardian ad litem at its discretion, but also had the duty to do so where necessary to protect the infant's best interests. He said that the functions of a guardian ad litem "are purely ministerial and not judicial or quasi-judicial and he must submit to the court for its consideration every question involving the rights of an infant affected by the suit." The judge found that the father acted in good faith, but because of the language barrier was unable to comprehend the inherent difficulties present in the case and the strong probability that there would be no recovery if the case went to trial. The judge considered it his primary duty to safeguard the interests of the infant and ordered that defendant's $4,000 compromise settlement offer be accepted. Id. at 703-704. The Appellate Division ultimately reversed, based on its determination that the record below was "insufficient to permit an informed conclusion concerning the wisdom of the decision." Lee v. Gucker, 27 A.D.2d 722, 279 N.Y.S.2d 697 (1967).
In Glogowski v. Rapson, 20 Misc.2d 96, 198 N.Y.S.2d 87 (N.Y. Sup. Ct. 1959), the trial court directed that the cause of action be compromised over the guardian ad litem's refusal to accept the defendant's $1,850 offer in settlement of the claims of the infant and the father where the infant sustained head injuries in an accident while a passenger in her father's car. The guardian had insisted on deferring trial until the infant *92 reached 21 years of age. Id. 198 N.Y.S.2d at 88. A medical examination indicated that the infant's condition after the accident was unrelated to the accident and was instead the result of mental retardation.
The judge in Glogowski concluded that the totality of the circumstances, including the results of the infant's medical examination, rendered the refusal to accept the settlement offer unreasonable and arbitrary. Glogowski relied on the 1959 trial court decision in Lee v. Gucker (reversed in 1967), in concluding that the civil practice rule governing the duties of a guardian ad litem
was not designed to confer upon the guardian ad litem a power of veto over proposed compromise settlements of infants' causes of action nor to permit the guardian ad litem to frustrate a proposed compromise of such action where to do so would virtually amount to a partial surrender of the court's jurisdiction to such guardian. [198 N.Y.S.2d at 89].
DeForte v. Liggett & Myers Tobacco Co., 42 Misc.2d 721, 248 N.Y.S.2d 764 (N.Y. Sup. Ct. 1964), was another trial court decision which followed the earlier trial court decision in Lee v. Gucker.[13] However, in Smith v. Ford Motor Co., 38 A.D.2d 852, 330 N.Y.S.2d 182 (N.Y. App. Div. 1972), the appellate court held that even assuming, without deciding that the trial judge had power to remove the infants' guardian, their grandmother, and replace her with a court-appointed guardian due to her *93 rejection of a settlement, it was an abuse of discretion to do so. The court said: "We believe that the trial court lacked power to compel acceptance of the settlement offer over the objections of the administratrix and her attorney; moreover, on this record it was an abuse of discretion to do so." 330 N.Y.S.2d at 183. See also Hollaway v. Scripps Memorial Hospital, 111 Cal. App.3d 719, 168 Cal. Rptr. 782 (Ct.App. 4th Dist. 1980), which is to the same effect.
More recently, and subsequent to its 1967 reversal of Lee v. Gucker, supra, New York's Appellate Division in Sutherland by Sutherland v. City of New York, 107 A.D.2d 568, 483 N.Y.S.2d 307 (1988), addressed the issue of whether a guardian ad litem can be removed for refusal to accept a settlement offer. The trial judge there had also supervised settlement negotiations. The mother, who was guardian ad litem, accepted defendant's compromise offer of $1.2 million plus $450,000 for attorney fees in settlement of her claims and the infant's claims in a medical malpractice. Although defendant's offer was not conditioned upon a structured payment of the settlement funds, the judge determined that it would be in the infant's best interest if payments were made over a period of years. The mother rejected a structured payment and insisted on a lump sum payment. In response, the judge removed her as guardian and appointed a substitute. Id. 483 N.Y.S.2d at 308. The Appellate Division reversed that order as improperly entered. Although the trial judge may have been motivated by concern for the infant's best interest, the appellate court's examination of the settlement proceeding led it to conclude that the mother was quite capable of determining the proper settlement package for her daughter. 483 N.Y.S.2d at 308. The court noted that New York's policy was "`to encourage parents to act as guardians,'" and that the legislative preference for the representation by a natural guardian is indicated in N.Y. *94 Civ.Prac.L. & R. 1201 and 1202 (McKinney 1988).[14] Mindful of the court's responsibility to approve infant settlements under N.Y.Civ.Prac.L. & R. 1207 (McKinney 1988), that are in the infant's best interest, the Appellate Division concluded:
where the mother has negotiated and agreed to accept a substantial sum in settlement and the only disagreement with the Court is whether that amount should be paid in one sum, or in structured payments, we find such disagreement to be insufficient to warrant the removal of the natural parent, as guardian ad litem. Ibid.

The court, citing its reversal of Lee v. Gucker, concluded that the "power to approve settlements does not translate into a power to dictate the terms of settlement." Sutherland, supra (483 N.Y.S.2d at 308). Compare Holloway v. Scripps Memorial Hospital, supra (168 Cal. Rptr. at 784).
New Jersey has no reported authority on the subject. Carton v. Borden, 14 N.J. Super. 308 (Ch.Div. 1951), rev'd on other grounds, 8 N.J. 352 (1952), one of the few New Jersey cases cited by the parties, involved a law suit instituted by former attorneys for the estate and trust under a will which had directed their employment in administering of the estate and trust.[15] The attorneys were attempting to bring allegations of misuse of funds by the fiduciaries to the court's attention and a guardian ad litem was appointed by consent order to protect the infant's rights. The judge held that the attorneys did not have standing to institute the action and since the guardian had been appointed by the court he could be removed by it. Moreover, a guardian could be appointed in the then County Court where further proceedings could be held. Hence, the judge *95 concluded that the interests of the infant would be protected. Id. 14 N.J. Super. at 316. On appeal, the Supreme Court held it was error to disallow the guardian's suit where he had been given the standing of a plaintiff by consent order. 8 N.J. at 357. Although the judge had jurisdiction to hear the case, he also had discretion to transfer the matter to the County Court which had "ample jurisdiction to give all parties in interest complete relief." Dismissal of the complaint was reversed and the restraints previously imposed were continued until the County Court could entertain the matter and consider appropriate restraints. Ibid.
Carton hardly stands for the proposition that a guardian ad litem bringing a tort action can be removed merely because the guardian is appointed by the court (see 14 N.J. Super. at 316). Inthe instant case, unlike Carton, the appointment of the guardian ad litem was not made by court order, but as authorized by the court rules. Moreover, as we read Carton, efforts by the guardian ad litem to protect the interests of the infant hardly warrant removal. 8 N.J. at 357-358. Cf. Ford v. Moore, 79 A.D.2d 403, 436 N.Y.S.2d 882, 884 (1981) (it does not follow that because the guardian ad litem was appointed by the Surrogate's Court there is unfettered discretion to remove the guardian).
We do not hold that a court may not inquire into the actions of the guardian ad litem, or may not remove such guardian for sufficient cause. However, any such removal must be for good cause and based on clear and convincing evidence of misconduct or inability to serve the best interests of the ward, or incapacity of the guardian ad litem. It may include conflict of interests which would prevent any reasonably prudent person, including a parent, from continuing to serve as a guardian ad litem. However, a mere difference of opinion, such as existed in this case, as to whether or not a proposed settlement offer was sufficient, or should be accepted because of the inherent risks of a trial on liability or damages, *96 or both, is neither misconduct nor such conflict of interest as would warrant the court's interference to in effect compel a settlement. See Holloway v. Scripps Mem. Hosp., supra, 168 Cal. Rptr. at 784-785. Nor is removal of a fiduciary appropriate merely because of "friction or hostility." Braman v. Central Hanover Bank & Trust Co., 138 N.J. Eq. 165, 196 (Ch. 1946). However, a trustee may be removed where there is "clear and definite proof of fraud, gross carelessness or indifference." Id. at 196-197.
Attempts to remove a guardian for rejecting a settlement are to be discouraged. Such requests are not to be equated with the parties asking the court to approve a settlement. The rule requiring judicial approval of infant settlements, R. 4:44-1 et seq., is essentially designed to protect the best interests of the child, ensure fairness under the circumstances, and prevent a guardian from accepting a settlement package that provides more for the parents' economic position than for that of the future of the child. Bauer v. Griffin, 104 N.J. Super. 530, 548-549 (Law Div. 1969), aff'd 108 N.J. Super. 414 (App.Div. 1970), certif. den. 56 N.J. 245 (1970).
Cases dealing with the court's authority to protect the ward where proposed settlements have been accepted by both sides, but require court approval because of the fact of infancy or other incompetency of the plaintiff, do not have any bearing on whether a guardian ad litem for an infant plaintiff must accept a settlement. Mack v. Berry, 205 N.J. Super. 600 (Law Div. 1985), for example, essentially deals with the court's authority to scrutinize the fairness of a proposed settlement. See also 42 Am.Jur.2d Infants § 217 p. 192. Indeed, where there is a failure to follow the requirements for a court approved settlement the infant's claim may still be viable upon reaching majority. See Colfer v. Royal Globe Insurance Co., 214 N.J. Super. 374, 377 (App.Div. 1986). The rule protects not only against improvident compromise, but also attempts to secure the minor against dissipation of proceeds. See R. 4:48A; N.J.S.A. 3B:12-6; N.J. *97 S.A. 3B:15-16, -17. Such procedures protect against the potential of the parent as guardian seeking to elevate self-interest over that of the child's best interest in reaching a settlement. Bauer v. Griffin, supra, 104 N.J. Super. at 530.
Approval of infant settlements also takes into account what is in the best interest of the child. See Mack v. Berry, 205 N.J. Super. 600, 605 (Law Div. 1985). However, "best interest of the child" is nonetheless an abstract standard, incapable of precise definition in this or any case. We thus hold that where the guardian ad litem must exercise judgment and discretion in rejecting a settlement, unless it clearly and convincingly appears that there is a conflict between the parent's position and that of the infant or that the guardian is otherwise incapable of effectively exercising such judgment or discretion, the guardian may not be removed merely because the court disagrees with the guardian's judgment on the issue of settlement. Moreover, any proceeding to remove the guardian should be conducted by a judge who was not previously involved in the matter if it is apparent that the judge has become overly involved in the settlement negotiations. The record here does not support the judge's action in removing the infant's father as guardian ad litem.
This is not a case where it has been shown that the father of the infant is seeking to obtain a greater share of any settlement or award for himself. Indeed, quite the contrary is obvious from the record presented to us. The record reflects that plaintiff's decisions with respect to the proposed settlement offers were made on the basis of adequate financial and legal advice.
Nor is this a case where there is no possibility that plaintiffs could not achieve either a higher amount in settlement or a greater award after a jury trial. All parties recognize that merely because a jury may award a verdict, this does not mean that the judgment will ultimately be collectable in whole or in *98 part.[16] Nevertheless, we are reluctant to fashion any rule regarding the duties of guardians ad litem for infant plaintiffs based on "collectability" of a judgment as grounds for removal of a guardian ad litem where no other grounds exist for removal, even where there may be a risk that there are insufficient assets to substantially satisfy any potential judgment. It is the acknowledged responsibility of the parents in the first instance to provide for the love and affection and care of the infant. Indeed, Ethan's parents have supported him from birth through the time of the accident some 11 or 12 years ago, and to the present.[17] If there was no liability established or if an inadequate judgment resulted they would presumably still continue to do so for as long as they are able. Under such circumstances we deem it inappropriate for any court to presume that it knows better than the parents what is in the best interests of this child. Courts have necessarily limited ability to grasp and appreciate fully the particular family relationship and the feelings of the involved parents where a tragedy has befallen a family member as a result of an accident.
Merely because there may be risks regarding liability, or establishing liability of certain defendants and certain insurance carriers, or as to collectability of any recovery of damages, does not establish sufficient reasons for a judge to substitute his opinion and judgment for that of the guardian ad litem's as to what is in the best interest of the child, particularly where the parent is the guardian. If that were so, in every case involving an infant plaintiff where a settlement offer was refused the judge might feel bound for various reasons to force *99 a settlement or compel the guardian ad litem, under threat of removal, to settle.
The guardian ad litem under the circumstances here must of necessity have the sole right to accept or reject a settlement offer. Our rules and practice do not contemplate that the court can or should force a settlement on either side. See Pascarella v. Bruck, 190 N.J. Super. 118, 124-125 (App.Div. 1983), certif. den. 94 N.J. 600 (1983); Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974). Indeed, that is contrary to our judicial system.
The order under review is reversed and the matter is remanded for further proceedings not inconsistent herewith.
NOTES
[1] Holden explained in depositions the method used to secure the ladder to his above ground swimming pool at around the time of the incident. He testified that the ladder was held in the up position by use of a combination bicycle lock. Only Holden, his wife and son knew the combination. He knew that the ladder needed to be secured because on a prior occasion his three year old daughter was discovered walking along the pool deck which is accessed by the ladder. He said that once the ladder was in the up position it would blow over in the wind, but he never complained about that to the dealer (Piper Pools, Inc.) from whom he purchased the pool. On occasions Holden's son would remove the lock from the ladder for use on his bicycle. Holden then would substitute a rope for the lock. The method used to secure the ladder depended on what was more convenient at the time.
[2] Landmark Ins. Co. v. S & V. Pools, Inc., Docket No. L-084413-86. The Zukerman v. Piper Pools, Inc. case had been consolidated with the case of Landmark Ins. Co. v. Atreo Manufacturing Co. and Zukerman v. New Hampshire Ins. Group.
[3] We have reservations about whether the liability action should have proceeded when the declaratory judgment action had not been resolved. This deviates from the procedures discussed in Sussex Mutual Ins. Co. v. Halla Cleaners, Inc., 75 N.J. 117, 124, 127 (1977); and Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 391 (1970).
[4] Plaintiffs were represented by two law firms. Their original attorneys apparently referred the matter for consultation and trial to the second firm. Partners for both firms were advising plaintiff. Reference to plaintiff in the singular refers to Robert Zukerman unless otherwise indicated.
[5] Measured over Ethan's life expectancy the total yield was claimed to be $35,487,252, with a guaranteed total yield of $8,847,350.
[6] A certification by an attorney for plaintiffs contained a paragraph based "on information and belief," stating that the judge met "out of the presence of the plaintiff and plaintiff's counsel and pursuant to an Order to which the plaintiff was not a party," with the insurance representatives of all defendants except defendants Holden. The record indicates that the Holdens have deposited a total of $185,000 into court, which includes insurance coverage of $100,000, plus accrued interest of about $85,000.
[7] See, e.g., R. 4:52-1 (temporary restraint or other interim relief may be granted ex parte if it can be established that immediate and irreparable damage will result); Zoning Bd. of Adj., Sparta Tp. v. Service Elec. Cable T.V., 198 N.J. Super. 370 (App.Div. 1985) (before preliminary injunction issues plaintiff must establish likelihood of success on the merits; threat of immediate and irreparable harm; and that harm to the opposing party will be minimal); R. 4:3-3(c) (rule allows plaintiff ex parte application for order to change venue); R. 5:7A (in domestic violence situations ex parte relief available in the nature of a temporary restraining order); Grant v. Wright, 222 N.J. Super. 191, 196 (App.Div. 1988), certif. den. 111 N.J. 562 (1988) (a temporary ex parte restraint will be granted only in cases where plaintiff is in imminent danger of domestic violence).
[8] This transcript has been furnished to us on this appeal.
[9] See footnote 6, supra.
[10] A child under seven years of age is presumed incapable of contributory or comparative negligence, Bush v. N.J. & N.J. Transit Co., Inc., 30 N.J. 345, 352-353 (1959); Dillard v. Fue, 65 N.J. Super. 234, 237-238 (App.Div. 1961); Restatement, Torts 2d §§ 283A; 464(2)e, f; 488 and comments, yet ultimately it will be the court's factual and legal determination concerning the infant plaintiffs' capacity for negligence. In any event, a cause of action still must be proved.
[11] In this case the potential insurance coverage if all defendants are found liable, taking into account primary and excess coverage, ranges from $12,200,000 to $18,200,000. If the coverages involved in the declaratory judgment aspect of the consolidated case were eliminated, plaintiffs estimate that the coverages for the remaining defendants would be at least $6.2 million, assuming liability of all remaining defendants.
[12] R. 4:26-2 authorizes appointment of a guardian ad litem on the court's own motion or a motion made by any party to the action if no guardian has previously been appointed. R. 4:26-2(a) also authorizes the court to appoint such guardian if a conflict of interest arises between guardian and ward or "for other good cause." There is no limitation in the rule as to when a guardian may be appointed, nor does the rule provide that once appointed a guardian is no longer subject to review or supervision by the court. Just the opposite is true. The provision for friendly settlements is an example of such review and supervision. See R. 4:44-1 et seq.
[13] In DeForte, the infant sustained injuries when struck by an automobile. Plaintiff's attorney said that there were no witnesses available to help establish a prima facie case. Medical reports revealed that the infant had almost made a full recovery. Thus, the attorney said that it would be in the infant's best interest to settle. After several conferences and an extensive hearing, the judge concluded that it was in the infant's best interest to accept the settlement, since plaintiff would not be able to establish a prima facie case. Id. 248 N.Y.S.2d at 765-766. The judge said that even if plaintiff succeeded on the liability issue, the verdict would likely be less than the $5,000 offered. The judge, in concluding that the parents' refusal to accept the settlement was unreasonable and prejudicial to the rights of the infant, said: "[t]he rights of an infant cannot and should not be lost through obdurate, unreasonable and uninformed conduct and opinion of the guardian ad litem." Id. at 766.
[14] The procedure in New York for appointment of a guardian ad litem is governed by N.Y.Civ.Prac.L. & R. Rule 1201 (McKinney 1988), which establishes the requirement of representation of an infant by a guardian ad litem; Rule 1202 (McKinney 1988) sets forth the procedure for appointment of a guardian ad litem. Neither rule specifically provides for removal of a guardian ad litem. The New York rules are essentially comparable to our rules.
[15] The judge pointed out that such will provisions were merely precatory and the attorneys could not require the fiduciaries to enforce that provision of the will. 14 N.J. Super. at 312-313.
[16] See footnote 6, supra.
[17] Although it may be argued that it is not known for how long the parents could continue such support and potentially Ethan might become a ward of the State, such a consideration cannot usurp the obligations or rights of the parent regarding this litigation.