901 A.2d 381

ANDREW HOJNOWSKI, A MINOR, THROUGH HIS PARENTS AND GUARDIANS AD LITEM, JERRY HOJNOWSKI AND ANASTA-SIA HOJNOWSKI AND JERRY HOJNOWSKI AND ANASTASIA HOJNOWSKI, IN THEIR OWN RIGHT, PLAINTIFFS–RESPON-DENTS AND CROSS–APPELLANTS, v. VANS SKATE PARK, DEFENDANT–APPELLANT AND CROSS–RESPONDENT, AND MCCOWN DELEEUW COMPANY, JOHN DOE(S) SKATE PARK OWNER (A FICTITIOUS NAME) AND JANE DOE(S) INSUR-ANCE COMPANY (FOR MED PAY ONLY), DEFENDANTS.

Argued January 30, 2006—Decided July 17, 2006.

*Richard C. Wischusen* argued the cause for appellant and cross-respondent (*Reilly, Supple & Wischusen,* attorneys; *Alex W. Raybould,* on the briefs).

*Robert A. Porter* argued the cause for respondents and cross-appellants (*Bafundo, Porter, Borbi & Clancy,* attorneys).

*David G. Evans* submitted a brief on behalf of amicus curiae, Pacific Legal Foundation.

Justice ZAZZALI delivered the opinion of the Court.

In this appeal, we must determine whether a parent can bind a minor child to either a pre-injury waiver of liability or an agreement to arbitrate. In January 2003, twelve-year old Andrew Hojnowski was injured while skateboarding at a skate park facility operated by defendant Vans, Inc. (Vans). On a previous visit to the facility, Andrew's mother had executed a release on Andrew's behalf. That release contained a clause agreeing to submit any claims against Vans to arbitration, as well as a provision limiting Vans' liability. After Andrew and his parents (plaintiffs) brought suit seeking recovery for Andrew's injuries, Vans filed for commercial arbitration. Plaintiffs then moved to enjoin arbitration and to invalidate the liability release signed by Andrew's mother.

The trial court found that plaintiffs were bound by the arbitration provision and dismissed their complaint without prejudice. The court declined to rule on whether the liability release was valid, concluding that that issue should be determined by the arbitrator. On appeal, the Appellate Division unanimously voted to uphold the arbitration provision but divided on the validity of the liability release. The majority determined that a pre-injury release of liability executed by a parent on behalf of a minor child violates public policy and is therefore unenforceable. The dissent argued that the court should have deferred to the parent's decision to enter into the agreement and enforced the waiver. We affirm the majority and hold that although a parent may agree to bind a minor child to an arbitration provision, which in essence constitutes a choice of forum, a parent may not bind a minor child to a pre-injury release of a minor's prospective tort claims resulting from the minor's use of a commercial recreational facility. Pursuant to our *parens patriae* duty to protect the best interests

of the child, we will not enforce such a release in the context of this case.

## I.

In January 2003, twelve-year old Andrew Hojnowski and his mother, Anastasia Hojnowski, visited a Vans Store in Moorestown, New Jersey. Defendant Vans operated the retail store that sold skateboards and related merchandise and maintained a recreational skateboard facility. To enter the skate park, Vans required Andrew's mother to sign an exculpatory release. It appears that Andrew's mother did not execute a release on the date in question but had executed a release in December 2002, which Vans had kept on file.

The release, entitled "RELEASE AND WAIVER OF LIABILITY AND JURY TRIAL WITH INDEMNITY (FOR ALL VANS SKATEPARKS, STORES AND FACILITIES (COLLECTIVELY, 'PARKS') IN NEW JERSEY)," begins by stating:

> Please read this document. It affects Your legal rights against Vans, Inc. if you are injured. Do not sign this document unless you understand it. If You are a minor, Your parent or guardian is required to sign this legal document.

The document then provides, in relevant part:

> **2. Can You Make A Claim For Money If You Are Injured?**
>
> If you are injured and want to make a claim, you must file a demand before the American Arbitration Association (the "AAA").... You agree that any dispute between You and Vans will be decided by the AAA. Vans, Inc. will pay all costs of the arbitration for You....
>
> **3. Vans Is Asking You To Give Up Legal Rights in Order to Enter This Park**
>
> Because using Vans' Park, or even entering the Park as a spectator may increase your risk of harm, Vans is asking you to give up certain valuable legal rights. Here are the rights you are giving up when you sign this document:
>
> (a) You give up your right to sue Vans in a court of law.
>
> (b) You give up your right to a trial by jury.
>
> (c) You give up the right to claim money from Vans if you are injured unless Vans intentionally failed to prevent or correct a hazard caused by unsafe equipment or devices.
>
> (d) You give up the right to claim money from Vans if you wait more than one year from the injury in order to make a claim.

(e) You give up the right to claim money from Vans, Inc. if you are injured by another person.

(f) You give up the right to recover damages to punish or make an example of Vans, Inc.

**4. Rights You Do Not Give Up**

You do not give up the right:

(a) To have safe equipment, structures and devices at the Park for Your intended use.

(b) To claim compensation for Your injury from Vans, Inc. if you are hurt because the equipment, structures and devices at the Park are not safe for Your intended use.

. . . .

(e) To make a claim if Vans, Inc. or anyone working for Vans, Inc. intentionally hurts you.

**5. Who Is Bound By This Document?**

You are bound by this document. Anyone who has or can obtain Your rights is also bound by this document, such as Your family, relatives, guardians, executors or anyone responsible for You. . . .

**6. Other Information Important For You To Know**

You have the right to demand money if You believe Vans, Inc. intentionally caused You harm. If parts of this document are determined to be invalid, then that portion will be unenforceable and the remainder of the document will continue in full legal force and effect. . . .

Following those provisions, Andrew's mother answered "Yes" to the question: "Do You understand that You are giving up rights by signing this document if You are hurt?" The document also informed customers that "[b]y signing this document You agree that Vans, Inc. may rely on Your answers." Andrew's mother signed the release on Andrew's behalf in the space provided beneath that provision.

Plaintiffs claim that, during his use of Vans' facility in January 2003, Andrew suffered a fractured femur when an aggressive skateboarder, about whom his parents had complained to Vans, forced him off a skateboard ramp. Consequently, in August 2003, Andrew, acting through his parents as guardians *ad litem,* and his parents, in their own right, filed suit against Vans. Their complaint alleges that Vans "negligently fail[ed] to supervise the activities at the skate park, negligently failed to control activities of aggressive skateboarders, negligently failed to warn Plaintiffs' parents that

the activities of aggressive skateboarders would not be monitored, and negligently failed to provide a safe place to skateboard." Plaintiffs also filed suit against an unnamed corporate owner and insurance company. Vans responded by filing a demand for commercial arbitration with the American Arbitration Association. Plaintiffs then moved to enjoin the arbitration and to invalidate the pre-injury release signed by Andrew's mother, and Vans cross-moved for summary judgment. The trial court granted Vans' motion, dismissing plaintiffs' complaint without prejudice and ordering arbitration. The trial court, however, did not rule on the validity of the liability release, finding that the issue is "for the arbitrators to determine."

On appeal, the Appellate Division unanimously affirmed the trial court's grant of summary judgment concerning the validity of the arbitration provision. *Hojnowski v. Vans Skate Park*, 375 *N.J.Super.* 568, 574–75, 868 *A.*2d 1087 (App.Div.2005). The panel held that "a parent can enter into an enforceable contract, binding on the parent's minor child, that waives the right to trial by jury of the minor's bodily injury claims and requires submission of 'any dispute' to arbitration." *Ibid.* The panel also found that because the validity of a pre-injury liability waiver presents a question of public policy, the trial court should have ruled on the waiver's validity and not referred that question to the arbitrator. *Id.* at 581–82, 868 *A.*2d 1087. The panel then divided on the resolution of that issue.

The majority concluded that, under the circumstances of this matter, a parent lacks the authority "to sign a pre-tort agreement limiting the liability of a tortfeasor to exclude negligent conduct" and therefore voided the release. *Id.* at 583, 868 *A.*2d 1087. The majority reasoned that "the judiciary must stand as guardians of the State's children" and that

[w]ere [the court] to decide otherwise, [it] would be relieving an alleged wrongdoer from its traditional legal responsibility to provide compensation for injuries caused by its negligence and shifting the economic burden to families, public welfare agencies and private charities without any concomitant benefit to either an injured child or his parents.

[*Id.* at 590, 868 *A.*2d 1087.]

Judge Fisher dissented, arguing that the court should have enforced the liability waiver and deferred to a parent's decision regarding such matters. *Id.* at 591–92, 868 *A.*2d 1087 (Fisher, J., concurring in part and dissenting in part). In his view, "in the absence of parental unfitness, courts should not overrule parental decisions but should instead defer to a parent's own weighing of the benefits and risks when entering into agreements that relate to the activities of their children." *Id.* at 592, 868 *A.*2d 1087 (Fisher, J., concurring in part and dissenting in part).

Vans appealed to this Court as of right on the issue of the validity of the pre-injury release of liability. *R.* 2:2–1(a)(2). We also permitted the Pacific Legal Foundation to submit a brief as amicus curiae on that issue and granted plaintiffs' petition for certification on the question whether a parent can bind a minor child to arbitration.[1] 185 *N.J.* 36, 878 *A.*2d 853 (2005).

## II.

We first address whether New Jersey's public policy permits a parent to release a minor child's potential tort claims arising out of the minor's use of a commercial recreational facility. Plaintiffs argue that a parent may not waive a minor child's right to sue for negligence. Relying on *Fitzgerald v. Newark Morning Ledger Co.*, 111 *N.J.Super.* 104, 267 *A.*2d 557 (Law Div.1970), and numerous out-of-state decisions, plaintiffs claim that the vast majority of states have held that a parent's attempt to waive a child's prospective cause of action is void as a matter of public policy. Plaintiffs assert that public policy disfavors pre-injury waivers of liability

---

[1] On appeal, plaintiffs did not raise the issue of the enforceability of the arbitration provision or the pre-injury liability release against the parents in their own right. Accordingly, our analysis is limited to a determination of the enforceability of those provisions against the minor child. Because the issue is not before us, we neither express nor imply an opinion concerning whether a waiver-of-rights provision of the nature entered into by the parties would be enforceable as against an adult.

because they encourage tortious conduct by absolving a commercial enterprise of its ordinary duty to exercise due care. Plaintiffs also maintain that because a parent is not permitted to settle a child's post-injury tort claim without judicial approval, a parent should not be allowed to waive a child's potential claim before an injury occurs.

Defendant recognizes that the enforcement of parental liability waivers has been "treated in varied fashions by different states." However, defendant asserts that "[t]he more substantial and well-considered decisions favor enforcement of exculpatory agreements based on the fundamental right of parents to raise their children as they decide." Defendant further contends that it is "erroneous" to equate pre-tort releases of liability with post-tort releases because "[t]he conflict of interest and potential for harm to befall a minor are far different in the context of a release of an accrued tort claim where settlement funds are present and may be misappropriated." Finally, defendant claims that "[w]ithout enforceable [r]eleases many activities available to children may be forced to close due to liability concerns."

## A.

■ We begin our analysis of that issue by noting that there is ambiguity in the pre-injury release concerning whether the agreement extinguishes or merely limits plaintiffs' ability to recover against defendant for negligence. For example, although paragraph 3(c) provides that plaintiffs have "give[n] up the right to claim money from [defendant] unless [defendant] intentionally failed to prevent or correct a hazard caused by unsafe equipment or devices," paragraph 4(b) states that plaintiffs have not "give[n] up the right to claim compensation [if] the equipment, structures and devices at the Park are not safe for [their] intended use." We need not determine the precise scope and meaning of those terms, however, because we hold that the public policy of New Jersey prohibits a parent of a minor child from releasing a minor child's

potential tort claims arising out of the use of a commercial recreational facility.

## B.

Exculpatory agreements have long been disfavored in the law because they encourage a lack of care. *See, e.g., Gershon v. Regency Diving Ctr.,* 368 *N.J.Super.* 237, 247, 845 *A.*2d 720 (App.Div.2004); *Ultimate Computer Servs., Inc. v. Biltmore Realty Co.,* 183 *N.J.Super.* 144, 151, 443 *A.*2d 723 (App.Div.), *certif. denied,* 91 *N.J.* 184, 450 *A.*2d 522 (1982). For that reason, courts closely scrutinize liability releases and invalidate them if they violate public policy. *See, e.g., Lucier v. Williams,* 366 *N.J.Super.* 485, 491, 841 *A.*2d 907 (App.Div.2004) ("[C]ourts have not hesitated to strike limited liability clauses that are unconscionable or in violation of public policy."). It is well settled that to contract in advance to release tort liability resulting from intentional or reckless conduct violates public policy, *Kuzmiak v. Brookchester, Inc.,* 33 *N.J.Super.* 575, 580, 111 *A.*2d 425 (App.Div.1955); *Restatement (Second) of Contracts* § 195 (1981), as does a contract that releases liability from a statutorily-imposed duty, *McCarthy v. NASCAR, Inc.,* 48 *N.J.* 539, 542, 226 *A.*2d 713 (1967). Further, courts have found that exculpatory agreements for negligence claims violate public policy in a variety of settings, such as in residential leases, *Cardona v. Eden Realty Co.,* 118 *N.J.Super.* 381, 384, 288 *A.*2d 34 (App.Div.), *certif. denied,* 60 *N.J.* 354, 289 *A.*2d 799 (1972), or in connection with rendering professional services, *Lucier, supra,* 366 *N.J.Super.* at 495, 841 *A.*2d 907; *Erlich v. First National Bank,* 208 *N.J.Super.* 264, 287, 505 *A.*2d 220 (Law Div.1984).

The relevant public policy implicated in this matter is the protection of the best interests of the child under the *parens patriae* doctrine. *Parens patriae* refers to "the state in its capacity as provider of protection to those unable to care for themselves." *Black's Law Dictionary* 1144 (8th ed.2004). In keeping with that policy, the Legislature and the courts historical-

ly have afforded considerable protections to claims of minor children. The most significant of those protections concerns the compromise or release of a minor's post-injury claims. Under *Rule* 4:44, after a minor has suffered a tortious injury, a minor's parent or guardian may not dispose of a minor's existing cause of action without statutory or judicial approval. *See Moscatello ex rel. Moscatello v. Univ. of Med. & Dentistry of N.J.*, 342 *N.J.Super.* 351, 361, 776 *A.*2d 874 (App.Div.), *certif. denied*, 170 *N.J.* 207, 785 *A.*2d 435 (2001); *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 *N.J.Super.* 101, 110–11, 691 *A.*2d 1384 (App.Div.), *certif. denied*, 152 *N.J.* 188, 704 *A.*2d 18 (1997); *Colfer v. Royal Globe Ins. Co.*, 214 *N.J.Super.* 374, 377, 519 *A.*2d 893 (App.Div.1986). That *Rule* applies regardless of whether suit has been filed on the minor's behalf, *see, e.g., Moscatello, supra*, 342 *N.J.Super.* at 361, 776 *A.*2d 874, and its purpose is "to guard a minor against an improvident compromise [and] to secure the minor against dissipation of the proceeds," *Colfer, supra*, 214 *N.J.Super.* at 377, 519 *A.*2d 893.

Although the *Rule* governing post-injury settlements is not dispositive of our treatment of pre-injury releases, we find that the purposes underlying the post-injury settlement rule also apply in the present context. First, children deserve as much protection from the improvident compromise of their rights before an injury occurs as *Rule* 4:44 affords them after the injury. Moreover, at the time a parent decides to release the potential tort claims of his or her child, the parent may not fully understand the consequences of that action and may not have even read the waiver before signing. As the Utah Supreme Court has noted:

> These clauses are ... routinely imposed in a unilateral manner without any genuine bargaining or opportunity to pay a fee for insurance. The party demanding adherence to an exculpatory clause simply evades the necessity of liability coverage and then shifts the full burden of risk of harm to the other party. Compromise of an existing claim, however, relates to negligence that has already taken place and is subject to measurable damages. Such releases involve actual negotiations concerning ascertained rights and liabilities. *Thus, if anything, the policies relating to restrictions on a parent's right to compromise an existing claim apply with even greater force in the preinjury, exculpatory clause scenario.* [*Hawkins v. Peart*, 37 *P.*3d 1062, 1066 (Utah 2001) (emphasis added).]

Further, in both the pre- and post-injury context, it is necessary to ensure that children retain the ability to seek compensation for an injury. When a parent signs a pre-injury release of liability and the child is later injured, the parent is left to provide for the child's injuries while the negligent party suffers no liability. If a parent is unable to finance the child's injuries, the child may be left with no resources to obtain much needed care or support. *See Cooper v. Aspen Skiing Co.,* 48 *P.*3d 1229, 1235 (Colo.2002) ("[T]o allow a parent to release a child's possible future claims for injury caused by negligence may as a practical matter leave the minor in an unacceptably precarious position with no recourse, no parental support, and no method to support himself or care for his injury." (footnote omitted)); *Scott v. Pac. W. Mountain Resort,* 119 *Wash.*2d 484, 834 *P.*2d 6, 12 (1992) ("[W]here parents are unwilling or unable to provide for a seriously injured child, the child would have no recourse against a negligent party to acquire resources needed for care.").

Those concerns are even more acute in the context of commercial premises liability. In New Jersey, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.,* 175 *N.J.* 559, 563, 818 *A.*2d 314 (2003). That is because business owners "are in the best position to control the risk of harm. Ownership or control of the premises, for example, enables a party to prevent the harm." *Kuzmicz v. Ivy Hill Park Apartments, Inc.,* 147 *N.J.* 510, 517, 688 *A.*2d 1018 (1997) (citations omitted). It follows that in this case the risk of loss should fall on the party best suited to avert injury. *See Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 447, 625 *A.*2d 1110 (1993) (recognizing "salutary effect of shifting the risk of loss ... to those who should be able and are best able to bear them"). The operator of a commercial recreational enterprise can inspect the premises for unsafe conditions, train his or her employees with regard to the facility's proper operation, and regulate the types of activities permitted to occur. Such an operator also can obtain

insurance and spread the costs of insurance among its customers. Children, on the other hand, are not in a position to discover hazardous conditions or insure against risks. Moreover, the expectation that a commercial facility will be reasonably safe to do that which is within the scope of the invitation, *see Nisivoccia, supra,* 175 *N.J.* at 563, 818 *A.*2d 314, is especially important where the facility's patrons are minor children. If we were to permit waivers of liability, we would remove a significant incentive for operators of commercial enterprises that attract children to take reasonable precautions to protect their safety.

In finding that the exculpatory provision in this matter is invalid, we are in agreement not only with our own State's case law, but also with the overwhelming majority of other jurisdictions. *See, e.g., Fitzgerald, supra,* 111 *N.J.Super.* at 108, 267 *A.*2d 557 (invalidating exculpatory agreement executed by parent on behalf of minor child that released defendant from liability to child for future injuries and required parent to indemnify defendant for any claims brought by minor); *In re Royal Caribbean Cruises Ltd.,* 403 *F.Supp.*2d 1168, 1172–73 (S.D.Fla.2005) (stating that where "a release of liability is signed on behalf of a minor child for an activity run by a for-profit business, outside of a school or community setting, the release is typically unenforceable against the minor"); *Simmons v. Parkette Nat'l Gymnastic Training Ctr.,* 670 *F.Supp.* 140, 144 (E.D.Pa.1987) (concluding that parent's execution of pre-injury release did not exculpate third party from potential claims of minor child); *Apicella v. Valley Forge Military Acad. & Junior Coll.,* 630 *F.Supp.* 20, 24 (E.D.Pa.1985) ("Under Pennsylvania law, parents do not possess the authority to release ... potential claims of a minor child merely because of the parental relationship."); *Cooper, supra,* 48 *P.*3d at 1233–35 (holding that Colorado's public policy prohibits parents from contractually releasing child's future claims for injury caused by negligence); *Meyer v. Naperville Manner, Inc.,* 262 *Ill.App.*3d 141, 199 *Ill.Dec.* 572, 634 *N.E.*2d 411, 415 (1994) (concluding that because "parent's waiver of liability was not authorized by any statute or judicial approval, it had no effect to bar the minor child's (future)

cause of action"); *Santangelo v. City of New York*, 66 *A.D.*2d 880, 411 *N.Y.S.*2d 666, 667 (1978) (holding that minor was not bound by exculpatory release executed by parent on minor's behalf); *Munoz v. II Jaz, Inc.*, 863 *S.W.*2d 207, 209–10 (Tex.Ct.App.1993) (concluding that allowing parent to waive child's right to sue for personal injury "would be against the public policy to protect minor children"); *Scott, supra*, 834 *P.*2d at 12 ("To the extent a parent's release of a third party's liability for negligence purports to bar a child's own cause of action, it violates public policy and is unenforceable."); *Hawkins, supra*, 37 *P.*3d at 1065–66 (concluding that "a parent does not have the authority to release a child's claims before an injury"); *see also Auto. Workers v. Johnson Controls, Inc.*, 499 *U.S.* 187, 213, 111 *S.Ct.* 1196, 1211, 113 *L.Ed.*2d 158, 183 (1991) (White, J., concurring in part and concurring in the judgment) (stating that "the general rule is that parents cannot waive causes of action on behalf of their children"); *Doyle v. Bowdoin Coll.*, 403 *A.*2d 1206, 1208 n. 3 (Me.1979) (stating in dicta that parent cannot release child's cause of action); *Williams v. Patton*, 821 *S.W.*2d 141, 147 n. 8 (Tex.1991) (Doggett, J., concurring) (stating that parental releases of minor's potential tort claims are "outrightly disfavored").

Although we recognize that jurisdictions are not uniform on the question of waiver, our research discloses that the only published decisions in which such agreements have been upheld are in connection with non-commercial ventures, such as volunteer-run or non-profit organizations. *See, e.g., Hohe v. San Diego Unified Sch. Dist.*, 224 *Cal.App.*3d 1559, 274 *Cal.Rptr.* 647, 648–50 (1990) (upholding parental agreement releasing any claims of minor child resulting from child's participation in school-sponsored event); *Gonzalez v. City of Coral Gables*, 871 *So.*2d 1067, 1067 (Fla.Dist. Ct.App.2004) (upholding parental liability release in context of "community or school supported activities"); *Zivich v. Mentor Soccer Club, Inc.*, 82 *Ohio St.*3d 367, 696 *N.E.*2d 201, 207 (1998) (holding that parent may bind minor child to provision releasing volunteers and sponsors of non-profit sports activity from liability for negligence); *Sharon v. City of Newton*, 437 *Mass.* 99, 769

N.E.2d 738, 741, 745 (2002) (concluding that parent had authority to bind minor child to exculpatory release as condition of child's participation in public-school extracurricular sports activities). Without expressing an opinion on the validity of parental liability releases in such settings, it suffices to note that volunteer, community, and non-profit organizations involve different policy considerations than those associated with commercial enterprises. Such a distinction is buttressed by the fact that the Legislature has afforded civil immunity from negligence to certain volunteer athletic coaches, managers, officials, and sponsors of non-profit sports teams, *see, e.g., N.J.S.A.* 2A:62A–6 to –6.2, while not providing similar immunities from negligence in the commercial realm.

Accordingly, in view of the protections that our State historically has afforded to a minor's claims and the need to discourage negligent activity on the part of commercial enterprises attracting children, we hold that a parent's execution of a pre-injury release of a minor's future tort claims arising out of the use of a commercial recreational facility is unenforceable.

## C.

In so holding, we find that defendant's remaining contentions and those of the dissent below are unconvincing. First, we are not persuaded by the argument that we should allow for parental liability releases because a pre-injury release of a minor's potential tort claims is no different than a parent's decision not to bring suit on a minor's behalf. That argument ignores the fact that, under the tolling provisions of *N.J.S.A.* 2A:14–21, a minor retains the right to sue for most personal injuries for two years after reaching the age of majority, *N.J.S.A.* 2A:14–2. One of the rationales behind the tolling provision is that a child should not "be penalized for the ignorance or neglect of his parents or guardian in failing to assert [his or her legal] rights." *O'Connor v. Altus*, 67 *N.J.* 106, 131–32, 335 *A.*2d 545 (1975) (Pashman, J., concurring in part and dissenting in part). Consequently, although a parent may control a minor's right to seek tort compen-

sation until the age of majority—either by choosing not to sue or by neglecting to do so—a minor's claim is not eliminated by the parent's decision; it merely is delayed. Were we to uphold the challenged pre-injury release, however, we would permanently bar the minor's tort claim, a far more draconian effect.

■ Nor do we accept the argument that a parental release of liability on behalf of a minor child implicates a parent's fundamental right to direct the upbringing of his or her child. Although parents undoubtedly have a fundamental liberty interest "in the care, custody, and control of their children," *Troxel v. Granville*, 530 *U.S.* 57, 65, 120 *S.Ct.* 2054, 2060, 147 *L.Ed.*2d 49, 56 (2000), the question whether a parent may release a minor's future tort claims implicates wider public policy concerns and the *parens patriae* duty to protect the best interests of children. *See Cooper, supra*, 48 *P.*3d at 1235 n. 11 (concluding that parental release of child's right to sue for negligence is "not of the same character and quality as those rights recognized as implicating parents' fundamental liberty interest in the 'care, custody and control' of their children"). As the majority opinion below noted, "[w]ere it otherwise, existing restrictions on parental conduct in the context of litigation involving minors would long ago have been abrogated in New Jersey." *Hojnowski, supra*, 375 *N.J.Super.* at 585, 868 *A.*2d 1087. Indeed, the post-injury settlement rule is but one example of such restrictions. Moreover, nothing in our analysis interferes with the constitutionally protected right of a parent "to permit or deny a child's participation in any or all of the recreational activities that may be available." *Id.* at 597, 868 *A.*2d 1087 (Fisher, J., concurring in part and dissenting in part).

We also reject defendant's argument that enforcing parental releases of liability is necessary to ensure the continued viability of businesses offering sports activities to minors. We do not view tort liability as an unreasonable economic restraint on the ability of business owners to operate commercial recreational facilities. *See Scott, supra*, 834 *P.*2d at 12 (finding "[n]o legally sound reason ... for removing children's athletics from the normal tort sys-

tem"). Indeed, by invalidating pre-injury releases of liability executed by a parent on a minor's behalf, we are not altering the landscape of common-law tort liability principles by which commercial enterprises typically must abide. Rather, we are preserving the traditional duties owed by business owners to their invitees. Further, as noted, because such facilities derive economic benefit from their operation, they are better able to assume the costs associated with proper maintenance and the prevention of injury than are the children to whom they cater.

Finally, the dissent below argued that invalidating parental releases of liability "is at odds with our Legislature's willingness to render participants solely responsible for injuries resulting from the inherent risks of similar activities." *Hojnowski, supra,* 375 *N.J.Super.* at 593, 868 *A.*2d 1087 (Fisher, J., concurring in part and dissenting in part). That argument refers to legislative acts in the areas of skiing, *N.J.S.A.* 5:13–1 to –11; roller skating, *N.J.S.A.* 5:14–1 to –7; and equestrian activities, *N.J.S.A.* 5:15–1 to –12, which place the responsibility for injuries resulting from "inherent risks" of the sport on the participant. However, those statutes do not absolve an operator of a facility from liability for its own negligence. Instead, the statutes apply only to inherent risks, which, by their very nature, are those "that cannot be removed through the exercise of due care if the sport is to be enjoyed." *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 499, 677 *A.*2d 705 (1996); *see also Pietruska v. Craigmeur Ski Area,* 259 *N.J.Super.* 532, 537, 614 *A.*2d 639 (Law Div.1992) (finding that "[i]mproper operation of a ski lift is not an inherent risk of skiing since, with due care, it can be eliminated"). As such, inherent risks need not be the subject of waiver because "the general law of negligence has long recognized that a defendant has no duty with regard to such risks." *Brett, supra,* 144 *N.J.* at 499, 677 *A.*2d 705; *see also Meistrich v. Casino Arena Attractions, Inc.,* 31 *N.J.* 44, 49, 155 *A.*2d 90 (1959) (stating that assumption of inherent risk "is an alternate expression for the proposition that defendant was not negligent"). Thus, a commercial enterprise is

not liable for injuries sustained as a result of an activity's inherent risks so long as that enterprise has acted in accordance with "the ordinary duty owed to business invitees, including exercise of care commensurate with the nature of the risk, foreseeability of injury, and fairness in the circumstances." *Rosania v. Carmona,* 308 *N.J.Super.* 365, 374, 706 *A.*2d 191 (App.Div.), *certif. denied,* 154 *N.J.* 609, 713 *A.*2d 500 (1998).

### III.

The second issue that we must decide is whether a parent can bind a minor child to an agreement to arbitrate future disputes arising out of a commercial recreation contract. Plaintiffs contend that "[although] arbitration is an approved alternative to a jury trial, an unsophisticated parent, about to have [his or her] child enter a recreational facility, should not be permitted to bind [his or her] child to a waiver of a trial by jury." Defendant counters that this Court should enforce the parent's agreement to submit the minor's claims to arbitration because the Appellate Division previously upheld such an agreement in *Allgor v. Travelers Insurance Co.,* 280 *N.J.Super.* 254, 654 *A.*2d 1375 (App.Div.1995). Defendant also argues that plaintiffs should be bound to arbitrate the present matter because public policy favors the arbitration of disputes. We agree and find that a parent's agreement to arbitrate a minor's potential tort claims is not contrary to public policy.

### A.

Federal policy has favored the enforcement of arbitration agreements for many years. In 1925, Congress enacted the Federal Arbitration Act (FAA), 9 *U.S.C.A.* §§ 1–16, to reverse then existing judicial hostility to arbitration agreements and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 *U.S.* 20, 24, 111 *S.Ct.* 1647, 1651, 114 *L.Ed.*2d 26, 36 (1991). To that end, § 2 of the FAA provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction ... shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.* [Emphasis added.]

Although the FAA applies to both state and federal judicial proceedings, state contract-law principles generally govern a determination whether a valid agreement to arbitrate exists. *See, e.g., First Options of Chi., Inc. v. Kaplan,* 514 *U.S.* 938, 944, 115 *S.Ct.* 1920, 1924, 131 *L.Ed.*2d 985, 993 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts."). However, "a state cannot subject an arbitration agreement to more burdensome requirements than those governing the formation of other contracts." *Leodori v. CIGNA Corp.,* 175 *N.J.* 293, 302, 814 *A.*2d 1098, *cert. denied,* 540 *U.S.* 938, 124 *S.Ct.* 74, 157 *L.Ed.*2d 250 (2003).

 In New Jersey, arbitration also is a favored means of dispute resolution. *See, e.g., Martindale v. Sandvik, Inc.,* 173 *N.J.* 76, 84–85, 800 *A.*2d 872 (2002); *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,* 168 *N.J.* 124, 131, 773 *A.*2d 665 (2001); *Marchak v. Claridge Commons Inc.,* 134 *N.J.* 275, 281, 633 *A.*2d 531 (1993). Our Legislature codified its endorsement of arbitration agreements in the Arbitration Act, *N.J.S.A.* 2A:24–1 to –11, which, like its federal counterpart, provides that agreements to arbitrate shall be valid save for "such grounds as exist at law or in equity for the revocation of a contract," *N.J.S.A.* 2A:24–1.[2] In accordance with those principles, an agreement to arbitrate generally will be valid under state law unless it violates public policy. *See, e.g., Marchak, supra,* 134 *N.J.* at 281–82, 633 *A.*2d

---

[2] *N.J.S.A.* 2A:24–1 to –11 was superseded by a modified version of the Arbitration Act, *N.J.S.A.* 2A:23B–1 to –32, effective January 1, 2003, and applicable to agreements entered into on or after that date, *N.J.S.A.* 2A:23B–3a. Because the arbitration agreement at issue in this appeal was executed prior to that date, this matter is governed by the former statute.

531 ("Honoring an agreement to submit a matter to arbitration is consistent with the premise that, as long as the agreement does not violate public policy, parties may bargain freely."); *Faherty v. Faherty*, 97 *N.J.* 99, 105, 477 *A.*2d 1257 (1984) ("A court generally will enforce an arbitration agreement unless it violates public policy.").

## B.

In light of the strong public policy favoring the settlement of disputes through arbitration, we conclude that allowing a parent to bind a minor child to arbitrate future tort claims is not contrary to our duty as *parens patriae* to protect the best interests of the child. As opposed to a pre-injury release of liability, a pre-injury agreement to arbitrate does not require a minor to forego any substantive rights. Rather, such an agreement specifies only the forum in which those rights are vindicated. *See, e.g., Global Travel Mktg., Inc. v. Shea,* 908 *So.*2d 392, 403 (Fla.2005) (stating that distinction between waiver of forum in which claim is presented and outright waiver of legal claim "is a crucial consideration in determining whether state's interest in protecting children renders the waiver unenforceable"); *Cross v. Carnes,* 132 *Ohio App.*3d 157, 724 *N.E.*2d 828, 836 (1998) (stating that "parent's consent and release to arbitration only specifies the forum for resolution of the child's claim; it does not extinguish the claim"). In that respect, our Appellate Division has observed that

> [t]he ancient practice of arbitration "[i]n its broad sense, ... is a substitution, by consent of the parties, of another tribunal for the tribunal provided by the ordinary processes of law. The object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties."
>
> [*Carpenter v. Bloomer,* 54 *N.J.Super.* 157, 162, 148 *A.*2d 497 (App.Div.1959) (quoting *E. Eng'g Co. v. City of Ocean City,* 11 *N.J. Misc.* 508, 510–11, 167 *A.* 522 (Sup.Ct.1933)).]

Further, although this Court previously has not ruled on the issue, permitting arbitration of a minor's claims is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children. For example, in

*Allgor, supra,* the Appellate Division concluded that a father's contractual agreement to submit to arbitration disputes arising under his underinsured motorist policy also bound his minor son who filed a claim under that policy. 280 *N.J.Super.* at 262–65, 654 *A.*2d 1375. The court rejected the contention that "arbitration is not appropriate when the best interests of a child are at stake." *Id.* at 261, 654 *A.*2d 1375. Our decision in *Faherty* also supports enforcement of the arbitration provision at issue. In that case, we held that public policy permits spouses to include provisions in their separation agreements for arbitration of child support disputes, subject only to heightened judicial review of the arbitrator's award. *Faherty, supra,* 97 *N.J.* at 108–09, 477 *A.*2d 1257. We reasoned that

> *[w]e do not agree with those who fear that by allowing parents to agree to arbitrate child support, we are interfering with the judicial protection of the best interests of the child.* We see no valid reason why the arbitration process should not be available in the area of child support; the advantages of arbitration in domestic disputes outweigh any disadvantages.
>
> [*Id.* at 109, 477 *A.*2d 1257 (emphasis added).]

Finally, a review of case law from other jurisdictions reinforces our conclusion that a parent should be permitted to bind a minor child to arbitration. In *Global Travel Marketing, supra,* the Florida Supreme Court recently reversed a Florida Court of Appeals ruling, upon which plaintiffs relied, which held that parents lack authority to bind a minor child to arbitrate prospective claims arising out of a commercial travel contract for an African safari. 908 *So.*2d at 394–95. In finding that such agreements are "not contrary to the public policy of protecting children," *id.* at 405, the court recognized a "crucial" distinction between an outright waiver of a minor's legal claims and a waiver of the forum in which the claims are presented, *id.* at 403.

The Ohio Court of Appeals reached a similar conclusion in *Cross, supra,* 132 *Ohio App.*3d 157, 724 *N.E.*2d 828. There, the producers of a television show sought to enforce an arbitration agreement signed by a parent on behalf of a child who sued the show for fraud and defamation after the show allegedly portrayed

the child as a bully. *Id.* at 830–31. The court upheld that agreement and found that "a parent has the authority to bind his or her child to a resolution of the child's claims through arbitration." *Id.* at 836. The court reasoned that the Ohio Supreme Court previously had upheld a liability waiver executed by a parent on behalf of a minor participating in a recreational activity sponsored by a non-profit organization. *Ibid.* (citing *Zivich, supra,* 82 *Ohio St.*3d 367, 696 *N.E.*2d 201). In relying on *Zivich,* however, the court noted that

[a] parent's consent and release to arbitration only specifies the forum for resolution of the child's claim; it does not extinguish the claim. Logically, if a parent has the authority to bring and conduct a lawsuit on behalf of the child, he or she has the same authority to choose arbitration as the litigation forum.
[*Ibid.*]

*See also Doyle v. Giuliucci,* 62 *Cal.*2d 606, 43 *Cal.Rptr.* 697, 401 *P.*2d 1, 3 (1965) (stating that arbitration provision in contract for medical services signed by parent on minor's behalf "is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes"); *accord Leong v. Kaiser Found. Hosps.,* 71 *Haw.* 240, 788 *P.*2d 164, 169 (1990) (concurring with reasoning of *Doyle* and holding that minor was bound by arbitration provision in contract for medical services signed by father).

Although we recognize that certain cases from other jurisdictions have found a minor's claims to be non-arbitrable, those cases are distinguishable because they were decided solely on the basis of the individual contracts at issue in those appeals. They did not directly rule on the larger issue presented by this appeal—whether a parent can bind a minor child to arbitrate future disputes. *Fleetwood Enters. Inc. v. Gaskamp,* 280 *F.*3d 1069, 1077, *reh'g denied,* 303 *F.*3d 570 (5th Cir.2002) (holding that minor children were not bound to arbitrate injuries suffered as result of formaldehyde inhalation because children were neither signatories to mobile-home sales contract signed by their parents nor third-party beneficiaries of that contract); *Billieson v. City of New Orleans,* 863 *So.*2d 557, 562–63 (La.Ct.App.2003) (concluding that children's claims for lead poisoning were not precluded by

arbitration agreement between city housing authority and property management company because children were not third-party beneficiaries of agreement); *see also Lewis v. CEDU Educ. Servs.*, 135 *Idaho* 139, 15 *P.*3d 1147, 1152 (2000) (concluding that child was not bound to arbitrate based on language of contract and expressly declining to determine whether "minors should or should not be bound to arbitrate disputes arising out of contracts entered into on their behalf by their parents"); *Accomazzo v. CEDU Educ. Servs., Inc.*, 135 *Idaho* 145, 15 *P.*3d 1153, 1156 (2000) (same). Therefore, in the absence of any allegations relating to fraud, duress, or unconscionability in the signing of the contract or that the agreement to arbitrate was not written in clear and unambiguous terms, we conclude that a parent's agreement to arbitrate is valid and enforceable against any tort claims asserted on a minor's behalf.

## IV.

We affirm the judgment of the Appellate Division and refer this matter to the arbitrator for further proceedings consistent with this opinion.

Justice LaVECCHIA, concurring in part and dissenting in part.

I am in full agreement with that portion of the majority's decision that affirms enforcement of the parties' agreement to subject their dispute to arbitration. I part company from my colleagues, however, in so far as they have chosen to invalidate the waiver of liability that the parties to this appeal executed as a condition of the minor Andrew's use of defendant's property to skateboard. In that respect, I am in substantial agreement with the Appellate Division dissent that was penned by Judge Fisher. Essentially, because a waiver of rights of the type entered into by these parties generally would be enforceable as against an adult, I see no reason why this Court should prevent a parent from ratifying such a waiver on behalf of a child, provided that a court or arbitrator determines that the release is reasonable.

Although the majority declines to express any view on whether the waiver would be invalid if enforced against an adult, it is noteworthy that the waiver does not appear to involve any of the grounds that New Jersey courts have heretofore invoked to invalidate an exculpatory waiver. For example, the waiver does not exempt defendant from liability for a "future intentional tort or willful act or gross negligence." *Kuzmiak v. Brookchester, Inc.*, 33 *N.J.Super.* 575, 580, 111 *A.2d* 425 (App.Div.1955). Nor does the waiver seek a release from any statutorily imposed duty. *McCarthy v. NASCAR, Inc.*, 48 *N.J.* 539, 542, 226 *A.2d* 713 (1967). Furthermore, although the majority notes that "[e]xculpatory agreements have long been disfavored in the law," that proposition has been invoked not to invalidate a waiver, as the Court does here, but rather to explain that such waivers should be narrowly construed:

> Contracts of this nature are not favored by the law. They are strictly construed against the party relying on them and clear and explicit language in the contract is required to absolve a person from such a liability.
>
> [*McCarthy v. NASCAR, Inc.*, 87 *N.J.Super.* 442, 450, 209 *A.2d* 668 (Law Div.1965), aff'd, 90 *N.J.Super.* 574, 218 *A.2d* 871 (App.Div.1966), aff'd, 48 *N.J.* 539, 226 *A.2d* 713 (1967).]

*See also Gershon v. Regency Diving Ctr., Inc.*, 368 *N.J.Super.* 237, 247, 845 *A.2d* 720 (App.Div.2004) (stating more recently that because "the law does not favor exculpatory agreements," "[a]ny doubts or ambiguities as to the scope of the exculpatory language must be resolved against the drafter").

The fact that exculpatory waivers receive narrow construction from courts does not render such waivers unenforceable. Previously, we have stated that "[w]here [exculpatory agreements] do not adversely affect the public interest, exculpatory clauses in private agreements are generally sustained." *Mayfair Fabrics v. Henley*, 48 *N.J.* 483, 487, 226 *A.2d* 602 (1967). Such clauses most commonly are used and enforced in a "commercial context," *Chem. Bank, N.A. v. Bailey*, 296 *N.J.Super.* 515, 527, 687 *A.2d* 316 (App.Div.), *certif. denied*, 150 *N.J.* 28, 695 *A.2d* 671 (1997), and generally are valid and enforceable against individuals so long as the particular exculpatory clause does not involve a matter of

public interest. *McCarthy v. NASCAR, Inc.,* 48 N.J. 539, 543, 226 A.2d 713 (1967) (citing *Boyd v. Smith,* 372 Pa. 306, 94 A.2d 44, 46 (1953)). Many states also look to the notion of "public interest," or other related concepts, when determining whether to uphold the validity of an exculpatory waiver. The California Supreme Court's decision in *Tunkl v. Regents of the University of California,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 445–46 (1963), provides arguably the most widely accepted test applied to exculpatory agreements. *Tunkl* set forth six factors, one of which is whether "[t]he party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Id.* at 33, 383 P.2d at 445.

In my view, recreational activities such as skateboarding do not implicate the "public interest." [1] The majority apparently does not assert otherwise, lodging no objection to the content of the waiver. Rather, the majority focuses on the fact that defendant is attempting to enforce this particular waiver of rights against a minor.

Invoking the "best interests" of children under the *parens patriae* doctrine, the majority holds that the waiver is invalid as

---

[1] That conclusion is in accord with the majority of jurisdictions that have addressed the subject; they have concluded that recreational activities do not implicate the public interest. *See, e.g. Chauvlier v. Booth Creek Ski Holdings, Inc.,* 109 Wash.App. 334, 35 P.3d 383, 388 (2001) (stating that "skiing is not a 'service of great importance to the public,' much less a service of 'practical necessity.' "). Courts have upheld liability waivers in the context of the following recreational activities: automobile racing, being a spectator at an automobile race, scuba diving, horseback riding, roller skating, skydiving, mountain biking, recreational sumo wrestling, weightlifting at a fitness center, motorcycle racing, go-cart racing, bicycling, and ski racing. *Hanks v. Powder Ridge Rest. Corp.,* 276 Conn. 314, 885 A.2d 734, 752–53 (2005) (Norcott, J., dissenting) (collecting cases). On the other hand, a minority of states have found that snow-tubing and skiing activities do implicate the public interest. *See Hanks, supra,* 276 Conn. 314, 885 A.2d 734 (majority opinion); *Spencer v. Killington, Ltd.,* 167 Vt. 137, 702 A.2d 35 (1997); *Dalury v. S–K–I, Ltd.,* 164 Vt. 329, 670 A.2d 795 (1995). I find those cases unpersuasive. To find that recreational activities implicate the "public interest," would strip that term of meaningful content.

against public policy, and analogizes the instant situation to the requirement under *Rule* 4:44 that parental settlement of a minor's post-injury claims receive judicial approval. There is an important difference between the present pre-injury waiver and the circumstances *Rule* 4:44 seeks to address. "Our rules for friendly settlements, *R.* 4:44–1 *et seq.*, are intended to minimize or prevent conflicts of interest from occurring and to assure the reasonableness of settlements." *Zukerman v. Piper Pools,* 232 *N.J.Super.* 74, 90, 556 *A.*2d 775 (App.Div.1989). *See also Colfer v. Royal Globe Ins. Co.,* 214 *N.J.Super.* 374, 377, 519 *A.*2d 893 (App.Div. 1986) (noting that "[t]he purpose of the rule is not only to guard a minor against an improvident compromise but also to secure the minor against dissipation of the proceeds."). Because the pre-injury setting does not involve the specter of a potential monetary settlement that looms over post-injury settlements, conflicts are of little concern in the pre-injury setting. *See Sharon v. City of Newton,* 437 *Mass.* 99, 769 *N.E.*2d 738, 747 n. 10 (2002); *Zivich v. Mentor Soccer Club, Inc.,* 82 *Ohio St.*3d 367, 696 *N.E.*2d 201, 206 (1998); Angeline Purdy, Note, *Scott v. Pacific West Mountain Resort: Erroneously Invalidating Parental Releases of a Minor's Future Claim,* 68 *Wash. L.Rev.* 457 (1993).

Assuming, nonetheless, that a pre-injury contractual setting is similar to a post-injury setting, that does not support the conclusion that all waivers entered into on behalf of minors are unenforceable, a conclusion that simply goes too far. *Rule* 4:44 does not *bar* parental settlements. Rather, the rule requires judicial scrutiny "to ensure the reasonableness of settlements." *Zukerman, supra,* 232 *N.J.Super.* at 90, 556 *A.*2d 775. If *Rule* 4:44 provides an appropriate analogy, then the standard of reasonableness that applies to post-injury settlements should apply to the review of pre-injury waivers.

I acknowledge that as a general rule, minors can, before they reach the age of majority, disaffirm contracts into which they enter. *Mechanics Fin. Co. v. Paolino,* 29 *N.J.Super.* 449, 453, 102 *A.*2d 784 (App.Div.1954) (stating that "[i]t is generally true that an

infant may avoid his contract."); *Boyce v. Doyle*, 113 *N.J.Super.* 240, 241, 273 *A.2d* 408 (Law Div.1971) (stating that "[t]here can be no doubt but that contracts not of necessity may be voided by an infant either before or a reasonable time after he obtains his majority."); *Restatement (Second) of Contracts* §§ 12, 14 (1981); 7 *Corbin on Contracts* § 27.2 (Perillo rev.2002); 5 *Williston on Contracts* § 9.5 (Lord ed., 4th ed.1993). That general rule is not altered by a parent's signing of the contract on behalf of a minor. *See* 42 *Am.Jur.2d Infants* § 46 (2000) (stating that "[a]s a general rule, an infant's right to avoid his contract is not defeated by the fact that the contract was made by the infant and his or her parent, was made with the approval of his or her parent [or] was approved and ratified by his or her guardian"); *Del Bosco v. U.S. Ski Ass'n*, 839 *F.Supp.* 1470, 1474 n. 2 (D.Colo.1993) (noting that "[c]ourts that have decided the issue have determined that the signature of a parent does not validate an infant's contract.").

However, contracts entered into by minors can be enforceable if the contract is approved by a court. Indeed, as noted, *Rule* 4:44 allows settlement agreements involving minors to be enforced so long as a reviewing court determines that the agreement is "reasonable." *Zukerman, supra,* 232 *N.J.Super.* at 90, 556 *A.2d* 775. Beyond the settlement context, other states have enacted statutory schemes that bar minors from disaffirming certain contracts that have received judicial approval. *See, e.g., Cal. Fam. Code* § 6750–53 (2006) (covering entertainers and athletes); *Cal. Lab.Code* § 1700.37 (2006) (covering contracts between a minor and a talent agency); *N.Y. Arts & Cult. Affr. Law* § 35.03 (2006) (covering entertainers and athletes).

Although our Legislature has not yet enacted similar legislation, freedom of contract principles lead me to the conclusion that a pre-tort waiver entered into by a minor, or ratified by a parent on behalf of a minor, should be enforceable when a reviewing court or arbitrator determines that the waiver was reasonable and not based on unequal bargaining positions. *See Simmons v. Parkette Nat'l Gymnastic Training Ctr.,* 670 *F.Supp.* 140, 144 (E.D.Pa.

1987) (invalidating minor's pre-injury waiver and relying, in part, on the fact that "there was no court involvement in the transaction"). If the reasonableness of the waiver is approved, then a minor should be barred from disaffirming the contract, an approach that is consistent with *Rule* 4:44. It differs somewhat from *Rule* 4:44 in that I would allow a trial court to review the "reasonableness" of a pre-tort waiver when a defendant, post-injury, raises the waiver as a defense to a suit brought by an injured party.[2]

Post-injury review of pre-injury waivers eliminates the certainty that is provided by *Rule* 4:44 or, for example, the process established by statute in California and New York, all of which mandate that courts review contracts at the time they are executed. Potential defendants may, however, wish to bear the risk of such uncertainty given the benefits of any waiver ultimately upheld as reasonable. Absent action by the Legislature, I would permit court or arbitrator review and approval, as described, to validate a minor's contract in respect of the type of pre-injury liability waivers presented herein. In so stating, I offer no judgment about what forms of liability defendant purported to waive by this exculpatory release. I would have allowed the arbitrator to sort out the reasonableness and the reach of the waiver executed by the parties.

Accordingly, I would affirm in part, reverse in part, and remand the matter for further proceedings.

Justice RIVERA–SOTO joins in this opinion.

---

[2] Under *Rule* 4:44 litigants must obtain court approval at the time of entry into the settlement agreement. Requiring judicial approval at the time that a minor enters into a pre-injury waiver would be impractical and inefficient. Review would have to be limited to situations when an injury actually occurs. The reviewing court, of course, would have to view the "reasonableness" of the waiver as of the time that the waiver was executed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN and WALLACE—5.

*For affirmance in part/reversal in part/remandment*—Justices LaVECCHIA and RIVERA–SOTO—2.