The Court granted the petition for certification in this matter on March 2, 2018, and the appeal was scheduled for argument on November 7, 2018. The parties submitted a stipulation of dismissal on November 5, 2018, in accordance with Rule 2:8-2, advising that they have settled the matter. The Court determined on November 5, 2018, to accept the stipulation for filing, to dismiss the appeal, and to issue this order memorializing the dismissal.
I dissent because the issue raised is one of paramount public importance and because the failure to address it now will have grave social consequences.
*185 In this case, a distracted health club trainer negligently dropped a dumbbell on the head of Maria Pulice, a patron he was instructing, causing serious and permanent injuries. If you thought that the innocent victim of the health club's negligence had a right to recover for her injuries, you would be mistaken. The victim in this case, Ms. Pulice, is without a remedy on her negligence claim because the health club, Eclipse Fitness, required her to sign an exculpatory clause as a condition of membership admission, immunizing the health club from its own negligence.[1] The exculpatory clause signed by Ms. Pulice is part of a standard-form contract in the health club industry. Such contracts are called contracts of adhesion because they are offered on a take-it-or-leave it basis, because the public has no bargaining power to alter the contract's terms, and because the price of admission to a health club is to surrender one's right to insist that the club provide a safe environment.
The trial court dismissed Ms. Pulice's negligence action, and the Appellate Division affirmed because of Stelluti v. Casapenn Enterprises, LLC, 203 N.J. 286, 1 A.3d 678 (2010). In Stelluti, this Court upheld a similar contract of adhesion with a similar exculpatory clause that permitted a health club to operate negligently, and through its negligence to maim or kill its patrons without consequence. See ibid. In that case, Gina Stelluti signed an exculpatory clause on the day she joined a fitness club and immediately went to a spin class. Id. at 293-94, 1 A.3d 678. Because of Ms. Stelluti's inexperience, the instructor assisted in adjusting her bicycle seat and "showed her how to strap her feet to the pedals." Id. at 294, 1 A.3d 678. Within minutes after the class began, the handlebars to Ms. Stelluti's bicycle came flying off, and she fell forward with her feet strapped to the pedals. Ibid. She suffered serious injuries. Ibid. Because of the exculpatory clause, this Court affirmed the dismissal of Ms. Stelluti's personal-injury lawsuit seeking damages for the injuries caused by the fitness club's negligence. Id. at 313, 1 A.3d 678. In short, the Court absolved the fitness club of its negligence in failing to maintain the bicycle in safe working condition. See ibid.
Unlike my colleagues, I would hear the appeal, despite the settlement reached by the parties, and revisit Stelluti. See, e.g., Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 105 n.4, 995 A.2d 1094 (2010) (declining to dismiss case as moot after parties settled). "We have often declined ... to dismiss a matter on grounds of mootness, if the issue in the appeal is an important matter of public interest." Ibid. (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484, 946 A.2d 564 (2008) ).
A health club or gym should have a non-delegable duty to exercise reasonable care to ensure a patron's health and safety. Our common law should not give license to health clubs and gyms to escape that duty through a standard-form, industry-wide exculpatory clause, as Stelluti now permits.[2] The power to correct this mistake *186 remains in the hands of our Court when the next health club misadventure presents itself. The Legislature, however, as the preeminent body in advancing public policy, can act before the next preventable health club injury.
I.
"Exculpatory agreements have long been disfavored in the law because they encourage a lack of care." Hojnowski v. Vans Skate Park, 187 N.J. 323, 333, 901 A.2d 381 (2006). Indeed, until Stelluti, "[n]ever before in the modern era ha[d] this Court upheld an exculpatory clause in which a commercial enterprise protect[ed] itself against its own negligence at the expense of a consumer, who had no bargaining power to alter the terms of the contract." Stelluti, 203 N.J. at 320, 1 A.3d 678 (Albin, J., dissenting); see also id. at 319-20, 1 A.3d 678 (collecting cases striking down exculpatory clauses). Business owners are in the best position to prevent the risk of harm to their customers. Hojnowski, 187 N.J. at 335, 901 A.2d 381. "Unlike the customer, '[t]he operator of a commercial recreational enterprise can inspect the premises for unsafe conditions, train his or her employees with regard to the facility's proper operation, and regulate the types of activities permitted to occur.' " Stelluti, 203 N.J. at 319, 1 A.3d 678 (Albin, J., dissenting) (alteration in original) (quoting Hojnowski, 187 N.J. at 335, 901 A.2d 381 ). Moreover, a basic principle of our common law is that victims are entitled to compensation for the injuries they sustain at the hands of tortfeasors. See Marcinczyk v. State Police Training Comm'n, 203 N.J. 586, 593, 5 A.3d 785 (2010).
This Court has declared that a contract "inconsistent with the public interest or detrimental to the common good" is unenforceable. Vasquez v. Glassboro Serv. Ass'n, Inc., 83 N.J. 86, 98, 415 A.2d 1156 (1980). Allowing health clubs to dictate the terms of an agreement that eliminates their duty to exercise a reasonable degree of care toward their patrons is inconsistent with the public good.
As I stated in my dissent in Stelluti, "[t]ort law is not just about compensating victims, but also about preventing accidents." 203 N.J. at 325, 1 A.3d 678. Our tort law should require health clubs to maintain their equipment in a reasonably safe manner and to hold their employees to a standard of due care to ensure against preventable accidents. The law should discourage carelessness that leads to scenes "of handlebars flying off of spin bikes, of cables to weight machines breaking, of pools mistakenly treated with the wrong amounts or kinds of chemicals." Ibid. The logic behind forbidding exculpatory clauses is quite simple: "when business owners exercise due care, there are fewer accidents; when there are fewer accidents, there are fewer lawsuits; when there are fewer lawsuits, insurance premiums are more likely to go down rather than up." Id. at 326, 1 A.3d 678. Additionally, when health clubs do not exercise due care, when our law does not incentivize preventing injuries, not only do the victims of a health club's negligence suffer, but society bears the cost through the provisioning *187 of unemployment insurance, social services, and health care.
II.
At its best, our common law reflects enlightened public policy and notions of fairness that lead to just outcomes. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). When the common law fails that test -- when the right to contract becomes "a blank check for commercial interests to impose conditions on consumers through exculpatory clauses that violate the public's health and safety," Stelluti, 203 N.J. at 327, 1 A.3d 678 (Albin, J., dissenting) -- then the Legislature has a central role to play as the preeminent author of public policy in our democratic society. A misguided decision premised on the common law endures only through the indulgence of the Legislature.
I still have hope that in a properly presented case, perhaps through a statistically driven showing of the number of injured victims left uncompensated by the negligence of health clubs and the ultimate costs to society, the Court will look at this issue in a new light. See, e.g., Muller v. Oregon, 208 U.S. 412, 419 n.1, 28 S.Ct. 324, 52 L.Ed. 551 (1908) (using statistical evidence to show that women's health is impaired by excessive hours of labor); State v. Cromedy, 158 N.J. 112, 120-23, 727 A.2d 457 (1999) (using social science and statistical studies to show that race has impact on reliability of eyewitness identifications). The common law and our common sense instruct us to correct -- not perpetuate -- the mistakes of the past.

The facts are presented in the light most favorable to Ms. Pulice, because her negligence action against defendant Eclipse Fitness was dismissed on summary judgment. Globe Motor Co. v. Igdalev, 225 N.J. 469, 480, 139 A.3d 57 (2016) (stating that on summary judgment motion, facts are viewed in light most favorable to non-moving party); see also R. 4:46-2(c).

Stelluti held that an exculpatory clause cannot extinguish a gross negligence claim against a health club. 203 N.J. at 312-13, 1 A.3d 678. Ms. Stelluti and Ms. Pulice filed negligence claims, not gross negligence claims. To satisfy the gross negligence standard, the tortfeasor's negligence must be egregious. "Whereas negligence is 'the failure to exercise ordinary or reasonable care' that leads to a natural and probable injury, gross negligence is 'the failure to exercise slight care or diligence.' " Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364, 142 A.3d 742 (2016) (quoting Model Jury Charges (Civil), 5.12, Introductory Notes, "Gross Negligence" (approved Feb. 2004) ). Denying an accident victim a monetary recovery for catastrophic injuries caused by a tortfeasor's "failure to exercise ordinary or reasonable care" is not balanced out by permitting the victim a shot at a recovery for gross negligence when that standard cannot be met.