**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3918-19

STRIKE PCH, LLC,

     Plaintiff-Respondent,

v.

ISAAC STERN and DAVID
GLASS,

     Defendants,

and

JEFFREY REECE, CHANG
JIN KIM, and PINNEX CAPITAL
HOLDINGS, LLC,

     Defendants-Appellants.

_____

Argued October 19, 2021 – Decided November 15, 2021

Before Judges Messano, Accurso, and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Union County, Docket No. C-000084-19.

Jared Newman (Herrick, Feinstein, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellants (Herrick, Feinstein, LLP, attorneys; Avery Mehlman, on the briefs).

Jonathan T. Suder (Friedman, Suder & Cooke) of the Texas bar, admitted pro hac vice, argued the cause for respondent (Pinilis Halpern, LLP, Jonathan T. Suder and Glenn S. Orman (Friedman, Suder & Cooke) of the Texas bar, admitted pro hac vice, attorneys; Jonathan T. Suder, Glen S. Orman and William J. Pinilis, on the brief).

PER CURIAM

Defendants Pinnex Capital Holdings, LLC (Pinnex), Jeffrey Reece, and Chang Jin Kim (collectively, the Pinnex Defendants) appeal from the trial court's March 20, 2020 order (the March 20 order) that: 1) dismissed the second amended complaint filed by plaintiff, Strike PCH, LLC (Strike), without prejudice; and 2) further provided that "[t]he parties shall take all necessary steps to return the matter to [a]rbitration." We affirm in part, to the extent the order required only plaintiff and defendant Isaac Stern to return to arbitration. We reverse in all other respects, including the dismissal of the complaint against

2

the Pinnex Defendants and defendant David Glass, who never participated in the arbitration to which the court ordered the parties to "return."[1]

## I.

Strike's second amended complaint was dismissed on the Pinnex Defendants' motion to dismiss for failure to state a claim. R. 4:6-2(e). Routinely, on such motions the trial court "limit[s] its review to 'the pleadings themselves.' If the court considers evidence beyond the pleadings . . . , that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019) (quoting Roa v. Roa, 200 N.J. 555, 562 (2010)). We review the trial court's decision under either rule de novo. Id. at 108; Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019) ("We review a grant of summary judgment de novo, applying the same standard as the trial court." (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014))).

In its second amended complaint, Strike set forth the alleged relationship of the parties. Strike and Stern are the only members of Sokaor Capital, LLC

---

[1] Defendant Glass has not participated in this appeal. Nonetheless, for the reasons that follow, the judge lacked authority to compel his participation in the arbitration.

(Sokaor), a separate holding company which "sole purpose . . . [wa]s to invest in and own shares of Pinnex."  Stern is a managing member and CEO of Pinnex, a Delaware limited liability company, and holds a majority Class A membership interest in the LLC.  Reece and Kim are also members of Pinnex's board of managers, and Glass is purported to be "a former co-founder and owner of Pinnex," with "no formal title," but "actively advising Stern and taking action on behalf of Pinnex."

The Sokaor operating agreement required mandatory arbitration of any dispute under the agreement.  In October 2017, alleging Stern engaged in deceptive practices that limited its ability to participate in the purchase of additional Pinnex shares, Strike commenced American Arbitration Association (AAA) arbitration proceedings (the Arbitration) against Stern claiming minority member oppression, fraud, tortious interference, conversion, unjust enrichment, and veil piercing/alter ego.  The final arbitration award (the Award) in Strike's favor required Stern to transfer 446,018 Sokaor Series A Units to Strike. Because the Sokaor units were tied directly on a one-to-one basis with the units Sokaor held in Pinnex, the award effectively reduced the amount of shares Stern held in Pinnex.

A-3918-19

One day after the issuance of the final award, Stern sent an email informing Strike that the Pinnex board of managers planned to commence a forfeiture of the transferred shares. In relevant part, Stern stated:

> I regret to inform you that I have been notified that we . . . are in violation of the Pinnex Operating Agreement. It seems there is a restriction against the indirect transfer of Pinnex units. Transferring the additional shares in Sokoar [sic] per the panel's award is a violation of this covenant. As a penalty, I am being told that the board plans to impose a forfeiture upon us of 446,018 Pinnex units. The Board or corporate counsel will forward any communications regarding this forfeiture directly to you.

On July 3, 2019, Reece and Kim executed a written consent in lieu of meeting and approved a resolution; Stern voted "no." The resolution deemed the transfer contemplated by the Award to be a "Prohibited Indirect Transfer" under Pinnex's operating agreement. As a result, the resolution deemed Sokaor to have forfeited 446,018 Series A Units in Pinnex, with the forfeited units to be distributed among the "remaining Series A members of [Pinnex] pro-rata in accordance with their respective ownership of the Series A Units . . . ."

In the interim, on June 21, 2019, Strike filed a complaint against Stern seeking summary confirmation of the Award. See N.J.S.A. 2A:23B-22. Strike subsequently filed a first and second amended complaint adding Glass and the Pinnex Defendants and alleging various causes of action, including minority

member oppression, fraud, and tortious interference with contractual rights. In its second amended complaint, Strike contended the Award's forced transfer of units was not a "prohibited transfer" under the Pinnex operating agreement:

> This "written consent" expressly violates the Pinnex Operating Agreement, which states that these types of transfers are permitted if they are "required by a legal authority of competent jurisdiction" when that transfer would otherwise by a prohibited one. The Panel's May 15, 2019 Final Award was undoubtedly issued by "a legal authority of competent jurisdiction."

The Pinnex Defendants, Stern, and Glass filed separate motions to dismiss the second amended complaint. The Pinnex Defendants asserted several grounds supporting dismissal, and the judge heard oral arguments from all counsel. During argument, counsel for the Pinnex Defendants noted, "this is a dispute about an arbitration that we weren't even a party to." He explained further:

> The problem here is how the arbitrators phrased and put their award together. You can't have somebody put an award together and bound [sic] the party that was never there and handcuff a party that was never there not to be able to do what it's obligated to do and what it can do under it's [sic]operating agreement.
>
> [(alteration in original).]

Strike made substantive arguments to rebut those made by the Pinnex Defendants. At one point, counsel explained Strike's tortious interference claim:

> [A]n agreement to go to arbitration is . . . the agreement to be bound by the arbitration and to let the arbitration control. And the conduct of Pinnex . . . thwarted the whole purpose of the arbitration.
>
> Pinnex says we . . . have no privity. We have no relationship. And what we say is their conduct tortiously interfered with the benefits that should have flowed to us by virtue of our contract.

When the judge expressed her concern about the enforceability of the Award, Strike's counsel seemingly recognized the limitation of the arbitration provision in the Sokaor operating agreement, by continuing: "If you go back to arbitration, how do you get the arbitrator to change what Pinnex did? . . . You can't. You have to come here to do that." The judge reserved decision on the motions.

Several weeks later, the judge sent a letter to all counsel. She indicated she was vacating an order previously entered confirming the Award, noting she was unaware that a timely objection was filed. The judge wrote:

> I am not going to sign any order confirming an arbitration award which has clearly been entered as a result of incorrect information before the Panel. Accordingly, I am going to order the plaintiff to take whatever steps are necessary to reopen the award.
>
> I do not think the motion before me is ripe given the lack of a confirmed arbitration award[,] and I have denied the motion without prejudice pending action from an Arbitration Panel.
>
> [(Emphasis added).]

7

Several weeks after, the judge sent all counsel another letter: "As you know, I have ordered the parties to return to Arbitration . . . based on the fact that the award calls for a transfer of Sokaor shares which was not permitted according to Sokaor's Operating Agreement.[2] As a result, I am dismissing the case without prejudice." The March 20 order filed the same day stated: "<u>The parties shall take all necessary steps to return the matter to Arbitration</u>. . . . The case is dismissed without prejudice." (Emphasis added.)

Five days later, Strike commenced a new arbitration proceeding with AAA against Stern, Glass, and the Pinnex Defendants, asserting claims of minority member oppression, fraud, tortious interference, conversion, and unjust enrichment. The Pinnex Defendants wrote to AAA stating they were "not signatories to any arbitration agreement with Strike" and "not subject to the jurisdiction" of the arbitration panel. AAA notified the parties that the motion judge had "ordered all of the parties named in the [c]ourt caption to appear in the return to arbitration," thus the arbitration would proceed with all parties, including Glass and the Pinnex Defendants.

---

[2] It appears this was a misstatement by the judge, because the Pinnex Defendants' claim was that the Award violated Pinnex's operating agreement.

The Pinnex Defendants filed their notice of appeal and also filed a verified complaint and order to show cause before the chancery judge in Hudson County, where Pinnex has its place of business. The Hudson judge entered an order on July 10, 2020, dismissing the complaint citing lack of jurisdiction over the matter as a result of the pending appeal. On August 25, 2020, a preliminary arbitration hearing was held via video conference; the Pinnex defendants and Glass did not appear. Strike and Stern agreed to proceed with the arbitration after severing and staying any claims against the Pinnex Defendants and Glass.[3]

II.

The Pinnex Defendants' argument is straightforward. If the March 20 order was intended to apply to them, the judge lacked authority to compel arbitration of Strike's claims because they have no agreement with Strike, much less an agreement with Strike to arbitrate disputes.[4] Strike contends the issue is moot, since they and Stern have agreed to arbitrate only their respective claims

---

[3] Neither appellant nor respondent moved to supplement the record on appeal to include the events occurring after entry of the March 20 order, the only order under review. However, there is no apparent dispute regarding these events, nor any objection by either party to including them in this opinion.

[4] As noted, the Pinnex Defendants asserted other arguments in support of their motion to dismiss, the merits of which were not addressed by the motion judge. However, the only issue raised on appeal relates to the authority of the motion judge to compel the Pinnex Defendants to arbitrate Strike's claims against them.

and have severed and deferred any claims against the Pinnex Defendants. Alternatively, Strike argues that the judge fully intended to compel the Pinnex Defendants' participation in the AAA arbitration and had authority to do so under relevant case law.

Initially, the agreement Strike and Stern reached to sever the Pinnex Defendants from the AAA arbitration does not moot this appeal. AAA interpreted the March 20 order to compel arbitration of Strike's claims against the Pinnex Defendants. The decision to sever and stay that arbitration has not rendered the issue moot, because it only delays the interpretation AAA has already given to the March 20 order.

The only issue for us to resolve is whether the Pinnex Defendants can be compelled to arbitrate Strike's claims under these facts. "De novo review applies when appellate courts review determinations about the enforceability of contracts, including arbitration agreements." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). Although "arbitration [i]s a favored method for resolving disputes[] . . . [t]hat favored status . . . is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., PA, 168 N.J. 124, 131–32 (2001). "A court must first apply 'state contract-law principles . . . [to

determine] whether a valid agreement to arbitrate exists.'" Hirsch, 215 N.J. at 187 (alteration in original) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Ibid. (citing Garfinkel, 168 N.J. at 132); see also Kernahan, 236 N.J. at 319 ("[A] court's initial inquiry must be — just as it is for any other contract — whether the agreement to arbitrate . . . is 'the product of mutual assent, as determined under customary principles of contract law.'" (quoting Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014))).

In this case, it is undisputed that there was no agreement between Strike and the Pinnex Defendants. Strike broadly asserts that our courts have held non-signatories may be bound to an arbitration agreement under agency principles. See, e.g., Hirsch, 215 N.J. at 192 ("[A]s a matter of New Jersey law, courts properly have recognized that arbitration may be compelled by a non-signatory against a signatory to a contract on the basis of agency principles." (citing Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560, 569–70 (App. Div. 2007)). Strike contends that the relationships Stern had with Sokaor and the Pinnex Defendants effectively made Stern an agent of the Pinnex Defendants, binding

them to participate in arbitration pursuant to the Sokaor operating agreement. We disagree.

Initially, we note that interrelationships between the parties or disputes, standing alone, are insufficient to compel a non-signatory to participate in the arbitration. As we recently said, "Hirsch rejected the notion that the non-signatory would be required to arbitrate claims simply because they were intertwined with claims made against a signatory to the agreement." Crystal Point Condo. Ass'n v. Kinsale Ins. Co., 466 N.J. Super. 471, 485 (App. Div.), certif. granted, 248 N.J. 10 (2021) (citing Hirsch, 215 N.J. at 189). The facts in Hirsch demonstrate why Strike's argument is unavailing.

In Hirsch, the plaintiffs alleged they lost large sums of money through the purchase of securities that were part of a "Ponzi" scheme. 215 N.J. at 180. They sued Scudillo, who sold them the securities, as well as AFS, the financial services firm that employed him, and SAI, a separate corporation functioning as the broker-dealer conducting securities transactions, which compensated Scudillo for promoting certain financial products. Ibid. The plaintiffs executed applications with SAI to purchase certain securities, which Scudillo signed as SAI's "registered representative" or "principal"; the agreements contained arbitration provisions. Id. at 181–82.

The plaintiffs instituted arbitration against SAI and Scudillo, and they filed a complaint against AFS; AFS answered and filed a third-party complaint against Scudillo and SAI. Id. at 183–84. SAI moved to compel arbitration, arguing the provisions in the applications were broad enough to cover the disputes between it and AFS; AFS joined in the motion to compel arbitration of the plaintiff's claims against it. Id. at 184. The trial court granted the motion, and we affirmed. Ibid. Plaintiffs successfully petitioned for certification. Id. at 185.

The Court reasoned that the "arbitration clause makes no mention of other parties aside from Scudillo, who served as SAI's representative when executing the agreement containing the arbitration clause." Id. at 194. In the absence of "an express contractual arbitration obligation with" any of the other parties, the Court examined SAI's "argument that AFS . . . had standing to compel arbitration under an agency relationship." Id. at 195. It noted that Scudillo signed the agreement as SAI's representative, not as representative of AFS, and that SAI shared "no corporate ownership" of AFS. Ibid. The Court reiterated that the "intertwinement of claims and parties" was insufficient, and there was no evidence that AFS "expected to reap the benefits that accompany arbitration." Ibid. The Court contrasted these facts with those presented in Alfano. Ibid.

13

In Alfano, the plaintiff executed an account agreement containing an arbitration provision with DBSI, an indirect subsidiary of its parent company, DB. 393 N.J. Super. at 565–66. DB disclosed to the plaintiff that DB was not registered to sell securities in the United States, and that DBSI had acted as its agent in the sale of securities that were now the subject of the suit. Id. at 566. DB moved to compel arbitration, claiming that DBSI was its agent when it executed the agreement with the plaintiff. Ibid. Explaining in detail all the facts demonstrating that DBSI was acting as DB's agent and noting that the plaintiff sought to avoid arbitration by "declining to name DBSI as a defendant in th[e] action," we concluded that DB could enforce the terms of the arbitration agreement even though it was not a signatory to the agreement. Id. at 569–70.

Unlike in Hirsch and Alfano, where a non-signatory sought to compel arbitration against a signatory to the arbitration agreement, here, a signatory — Strike — seeks to compel arbitration against non-signatories — the Pinnex Defendants and Glass. Although Stern was a common denominator in Sokaor and Pinnex, holding interests in both, the LLCs were two separate legal entities with separate operating agreements. Sokaor was a separate company, not a subsidiary of Pinnex. See, e.g., Angrisani v. Fin. Tech. Ventures, LP, 402 N.J. Super. 138, 154 (App. Div. 2008) (recognizing "situations where a party to a

contract containing an arbitration clause seeks to bring an action based on the contract against a non-signatory to the contract that is closely aligned to a contracting party, such as a parent or successor corporation.").

Strike fails to allege sufficient facts demonstrating that when Stern entered into the Sokaor operating agreement, agreeing to submit all disputes under the agreement to AAA arbitration, he did so as an agent for the Pinnex Defendants or Glass. Nothing in the record demonstrates that Pinnex benefited from Stern's agreement with Strike, which Strike acknowledges in its complaint resulted from Stern's effort to increase his personal liquidity. See, e.g., Crystal Point, 466 N.J. Super. at 482 ("Non[-]signatories of a contract . . . may compel arbitration or be subject to arbitration if the nonparty is . . . a third[-]party beneficiary to the contract." (second alteration in original) (quoting Mut. Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853, 865 (D.N.J. 1992)). As a result, we reverse the March 20 order to the extent it ordered the Pinnex Defendants and Glass to participate in the AAA arbitration.

We also reverse the dismissal of Strike's second amended complaint against the Pinnex Defendants and Glass. Since she never addressed the many arguments the Pinnex Defendants, in particular, raised in support of the motion to dismiss, we presume the judge reached this decision only because she had

15

ordered arbitration. Because we are reversing the order compelling arbitration, we reverse the order dismissing Strike's second amended complaint. We do so without prejudice to the Pinnex Defendants or Glass reasserting their motions to dismiss if they choose, and we leave management of the proceedings pending the AAA arbitration to the discretion of the trial judge.

Strike and Stern have not cross-appealed from the March 20 order, which also compelled them to "return" to arbitration. As a result, we affirm the order in that regard.

Affirmed in part; reversed in part and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION